194 P.3d 255 (2008)
VERIZON NORTHWEST, INC., Appellant,
v.
WASHINGTON EMPLOYMENT SECURITY DEPARTMENT, Steven D. Ackerman, Lessa P. Adams, Angela L. Alexander, Matthew J. Alice, Marsha A. Allgire, Ann M. Almli, Larry F. Ames, Carol A. Arendse, Christine S. Bailey, Jerry J. Bakko, Sharon A. Barakat, Melissa J. Barran, David O. Bauer, Marlena S. Bauer, Thomas W. Becker, Suzanne M. Beckmann, Joanne L. Bell, Trent A. Berring, Starla J. Bessler, Michael E. Bevis, Denman M. Bird, Michael L. Bly, Bohdon W. Bodnarchuk, Russell L. Boknecht, John A. Boorman, Terri L. Bowker, David L. Bradford, Don R. Branson, Patricia A. Bray, Sonya L. Breaum, Travis S. Brian, Billye L. Brooks, Douglas M. Brown, Pamela J. Brown, Gary A. Buckner, Joseph T. Buongiorno, Nicki R. Burns-Amma, Katie G. Byrnes, Ron J. Caffreye, Kelly L. Campbell, Deborah J. Carlson, Lisa R. Carlson, Richard L. Carroll, Karen L. Carson, Richard F. Castano, Francisco J. Cayere, Raymond D. Chavis, Judy A. Chesley, Ezekiel J. Christenson, Steven R. Cleveland, Shirley A. Coleman, Kenneth D. Collins, Deborah M. Cooper, Kenneth A. Cunningham, Russell D. Curran, Thomas E. Dales, Sheila K. Davidson, Rosemary B. Davis, Tyra L. Debono, David J. Dingman, Dennis M. Dobbelaere, Jeanette S. Dodson, Thomas Doran, Jennifer L. Dowling, Fonda K. Downs, Judy Eddy, Gregory J. Eitelberg, Sheree L. Elmendorf, Joanne M. Ericksen, Cecile L. Ervin, Pamela J. Evans, Glenn W. Extor, Kenneth F. Faircloth, Roger M. Farrar, Tarri N. Feden, William C. Fisher, Edward T. Florez, Steve J. Fontaine, Floyd C. Foster, Donald J. Franks, George C. Fuller, Christine M. Funkhouser, Randy L. Furnas, Sterling H. Gibson, Terri L. Gibson, Marla J. Giese, Joye M. Gill, Karen M. Graham, Keith P. Green, John H. Griffis, Scott S. Haeger, Rodney D. Hagge, Cynthia A. Hall, Paula E. Harrington, Tim Harris, Larry M. Henderson, Sue J. Hicks, Thomas W. Higdon, Lynda A. Hildebrant, Curtis D. Hill, James C. Hill, Corine M. Hoiness, Norma K. Homann, Holly L. Hopper, Ellen A. Horne, Vanessa R. Horning, Berke T. Horrocks, Erik D. Hovde, Betsy J. Howard, Michael R. Howard, Steven J. Howard, Jerry R. Hudson, Gayle A. Humann, Regina H. Hunt, Michael G. Hupf, Nancy M. Hurlbut, David M. Jacobsen, Randal V. Jensen, Billy Jira, Alan W. Johnson, Debra J. Johnson, Leanne E. Johnson, Lori A. Johnson, Patricia E. Johnson, Thomas A. Johnson, Alvin W. Joiner, Mary A. Jones, Racquel K. Jonson, Dawn Kauhane, Robert W. Killops, Douglas P. Knight, Charlene Y. Kolacki, Alicyn S. Komine, Andrew F. Kops, Daniel N. Krah, Diana L. Ladiser, Gary S. Larson, Charles W. Lawrence, Andrea E. Lazanis, David W. Lee, Donna M. Legore, Dino J. Lence, Darla J. Lennier, Emory D. Lindgard, Richard D. Lippincott, Patricia A. Lohse, William C. Long Gregory J. Lundgren, Kenneth C. Maas, Jeanine M. Mackenzie, Mike P. Mahoney, Susan C. Malone, Kathleen G. Marrinier, Marcia A. Matson, Dallas L. McCormick, Debra C. McDade, Kristi A. McMullen, James C. McMurtry, Charles E. Mell, Linda J. Mismas, Karen A. Montague, Merrilyn J. Morrison, Joella J. Mueller, Kay S. Mulder, Constance C. Murry, Robert E. Neal, Edward D. Nelson, Gary L. Nelson, Robert A. Nelson, Terry L. Ness, Vinnie H. Nguyen, Patricia C. Nordby, Lorna M. Nunn, *256 Stephen C. Olesen, Barry N. Ordell, Andre H. Osborne, Kathryn A. Panfili, Janice Parker, Gretchen L. Paylor, Pamela Perryman, Jean M. Peterson, James M. Rainer, Gordon L. Rechcygl, David P. Ridgeway, Jeanne R. Rogers, Howard E. Ronkin, Gerald K. Ross, Ryan M. Roumonada, Mildred L. Ruosch, Beverly C. Russell, Mike T. Ryman, Ava G. Sakowski, Jill E. Saunders, Robert D. Schlagel, Keith D. Schulz, James D. Seaberg, Diane L. Searson, William K. Seufert, Jeffrey T. Shipley, Stephen D. Shipley, Margaret E. Simmons, Dallas J. Singleton, Dwight O. Sissons, John L. Smits, Faith V. Snelgrove, Cheryl A. Snyder, Fern K. Soderstrom, Cynthia A. St. Clair, Traci L. Steenburgen, Donald W. Stingley, Sharon L. Stjern, Diana L. Storey, James M. Strago, Carol S. Stultz, Doug E. Sundin, Christine I. Surina, Julie A. Swanson, Patrick C. Sweeney, Jo Ellen F. Swehla, Jose F. Terrazas, Candace M. Testa, Eileen A. Teufel, Donald P. Thomas, Stacey S. Thomas, Richard W. Tickle, David N. Ulrich, Rodney A. Visser, Eric M. Wahl, Krina L. Wall, Robin E. Warren, Michael J. Weddle, Janet L. Weeks, Greg R. Wegner, Steve L. Westman, William Westwood, Barbara J. Wetzel, Alison D. Weymouth, William A. Wheaton, Jr., James R. Whisman, Jonathan C. White, Charlene M. Wicklund, Sherri L. Williams, Terry E. Wilson, Feye L. Woods, Maria Wraspir, Ralph R. Yunker, Fred T. Zelich, Respondents.
No. 81024-9.
Supreme Court of Washington, En Banc.
October 23, 2008.
*258 Timothy J. O'Connell, Theresa A. Briscoe, Stoel Rives LLP, Seattle, WA, for Appellant.
Gregory Marc Worthy, Erika G.S. Uhl, Office of Attorney General, John Tirpak, Unemployment Law Project, Seattle, Steven J. Howard, Bothell, Alan W. Johnson, Orting, Cynthia A. St. Clair, Everett, Charlene M. Wicklund, Marysville, for Respondents.
OWENS, J.
¶ 1 In late 2003, a number of managers employed by appellant Verizon Northwest, Inc. (Verizon) chose to participate in a Voluntary Separation Program for Management Employees (MVSP). The former managers (the employees) then applied for and were granted unemployment benefits. This case requires us to interpret the regulatory "employer-initiated layoff" exception to the Employment Security Act (ESA), Title 50 RCW, rule that employees are disqualified from receiving benefits if they leave their employment "voluntarily without good cause" (the "good cause" provision). RCW 50.20.050.
¶ 2 After the Employment Security Department (ESD) determined that the employees were eligible for unemployment benefits, Verizon appealed to the Office of Administrative Hearings for the ESD.[1] An administrative law judge (ALJ) granted summary judgment that the employees were entitled to benefits, and a commissioner of the ESD (Commissioner) affirmed. A Snohomish County Superior Court judge affirmed the Commissioner's ruling. This court now reverses the Commissioner's ruling and holds that Verizon is entitled to summary judgment that the employees are not qualified to receive benefits.

I. Facts
¶ 3 In July 2003, Verizon announced that it had a goal of reducing its work force by 5,000 employees out of a total of approximately 220,000 employees nationwide. In September, it sent an email to "All Management Employees" announcing the MVSP. Commissioner's Record (CR) at 879-85. The email said, in part: "This program is one of many steps the company is taking to reposition itself to remain successful. While Verizon is the leader in the telecommunications industry, this is a very challenging time.... As a result, Verizon must reduce costs to stay competitive and preserve financial strength." CR at 880.
¶ 4 On October 1, 2003, the company sent a notification letter to those employees who were eligible to participate in the MVSP, a group that included nearly all of its managers. It stated: "We are pleased to inform you that you are among a group of employees who are eligible to volunteer for a reduction in force (RIF)." CR at 843. The MVSP included severance payments, one year of health benefits, immediate stock option vesting, and, in some cases, pension enhancements for participating employees. The letter set the deadline for participation at November 14.
¶ 5 Employees could participate by submitting the volunteer form on-line or by fax and by signing a separation agreement and release *259 (Release). The Release stated: "I am voluntarily leaving the employment of [Verizon] effective November 21, 2003 because of a Reduction in Force (`RIF')." CR at 1002. Employees who volunteered on-line received a confirmation screen with the title "Acceptance of your voluntary separation received." CR at 847.
¶ 6 Verizon provided employees with a lengthy list of "Questions and Answers" about the MVSP. CR at 946-87. Question number 60 advised that individual states determine unemployment benefit eligibility and that "[m]ost states disqualify applicants who leave employment voluntarily." CR at 969.
¶ 7 On November 14, 2003, Verizon sent an email clarifying that employees who had accepted the offer to participate in the program could rescind their acceptances until November 22. On November 17, the company informed all employees by email that more than 20,000 employees, including more than 16,000 managers, had chosen to participate in voluntary separation programs. This number represented about 10 percent of the total Verizon work force. The email stated: "[T]he company expects to backfill some of the positions with new hires who have skills focused on newer technologies, such as fiber optics and Internet protocol. [We] will also replace some management positions by promoting associates into vacant positions." CR at 1015. At the time of this announcement, the employees had five days remaining in which to rescind their participation in the MVSP.[2]
¶ 8 Verizon posted and filled 37 management jobs in Washington State from September to November 2003. It posted over 3,000 job openings nationwide in December 2003.
¶ 9 More than 200 former Verizon employees who had participated in the MVSP applied for unemployment benefits in Washington. The ESD issued determination notices declaring that the employees were disqualified from receiving unemployment benefits because they had left work "voluntarily without good cause," as outlined in RCW 50.20.050(1). The ESD then reversed itself and issued redetermination notices to the employees.
¶ 10 Verizon appealed, and the appeals were consolidated before an ALJ at the Office of Administrative Hearings for the ESD. After reviewing the record and listening to oral argument by counsel, the ALJ granted summary judgment to the employees, affirming the ESD's determination that they were eligible for benefits. Specifically, she found that the employees were entitled to judgment in that they had satisfied all the elements of WAC 192-150-100(1), the "employer-initiated layoff" exception to the "good cause" rule.
¶ 11 Verizon appealed to the Commissioner of the ESD, and the Commissioner affirmed the ALJ. Clerk's Papers (CP) at 60. She adopted all of the ALJ's "findings of fact[[3]] and conclusions of law" except for one footnote. CP at 59. Verizon appealed to the Snohomish County Superior Court and that court affirmed. Verizon appealed to the Court of Appeals, and the Supreme Court commissioner issued a ruling transferring the appeal to this court pursuant to RAP 4.4.

II. Issue
¶ 12 Did employees who participated in Verizon's MVSP qualify for the WAC 192-150-100(1) "employer-initiated layoff" exception to the RCW 50.20.050(1) "good cause" to quit rule?

III. Analysis

A. Standard of Review
¶ 13 The Washington Administrative Procedure Act (APA), chapter 34.05 RCW, governs judicial review of a final decision of the Commissioner of the ESD. Tapper v. Employment Sec. Dep't, 122 Wash.2d 397, 402, 858 P.2d 494 (1993). This court *260 applies the APA standards directly to the administrative record. Id. The court reviews the decision of the Commissioner, not the underlying decision of the ALJ. Id. at 405-06, 858 P.2d 494. Because this court sits in the same position as the superior court, we do not give deference to the superior court's rulings. Waste Mgmt. of Seattle, Inc. v. Utils. & Transp. Comm'n, 123 Wash.2d 621, 633, 869 P.2d 1034 (1994).
¶ 14 Under the APA, we review the Commissioner's legal determinations using the "error of law" standard, see RCW 34.05.570(3)(d), which allows us to substitute our view of the law for that of the Commissioner, Haley v. Medical Disciplinary Board, 117 Wash.2d 720, 728, 818 P.2d 1062 (1991). However, under this standard, we accord substantial weight to an agency's interpretation of a statute within its expertise, Macey v. Department of Employment Security, 110 Wash.2d 308, 313, 752 P.2d 372 (1988), and to an agency's interpretation of rules that the agency promulgated, Washington State Liquor Control Board v. Washington State Personnel Board, 88 Wash.2d 368, 379, 561 P.2d 195 (1977).
¶ 15 We note that the standard of review also hinges on the fact that this case was originally decided on summary judgment. The APA does not explicitly authorize agencies to use summary judgment procedures. It follows that the portion of the APA that lists the standards for judicial review, RCW 34.05.570, does not expressly contemplate review of summary judgment. Though this court has not ruled on the issue, the Court of Appeals has correctly concluded that where the original administrative decision was on summary judgment, the reviewing court must overlay the APA standard of review with the summary judgment standard. Alpine Lakes Prot. Soc'y v. Dep't of Natural Res., 102 Wash.App. 1, 14, 979 P.2d 929 (1999); Eastlake Comm. Council v. City of Seattle, 64 Wash.App. 273, 276, 823 P.2d 1132 (1992); Kettle Range Conservation Group v. Dep't of Natural Res., 120 Wash. App. 434, 456, 85 P.3d 894 (2003). Accordingly, we view the facts in the record in the light most favorable to the nonmoving party. Alpine Lakes, 102 Wash.App. at 14, 979 P.2d 929. Summary judgment is appropriate only where the undisputed facts entitle the moving party to judgment as a matter of law. Id. We evaluate the facts in the administrative record de novo and the law in light of the above-articulated "error of law" standard.[4]

B. Statutory and Regulatory Framework: "Good Cause" to Quit and the "Employer-Initiated Layoff" Exception
¶ 16 In general, the ESA provides unemployment benefits to any unemployed person unless that person is statutorily disqualified from receiving benefits. Safeco Ins. Cos. v. Meyering, 102 Wash.2d 385, 388-89, 687 P.2d 195 (1984). A person may not receive benefits if she or he leaves work "voluntarily without good cause." RCW 50.20.050(1).
¶ 17 WAC 192-150-100 describes one set of circumstances in which the "good cause" provision will not disqualify a person from receiving unemployment benefits.[5] This so-called "employer-initiated layoff" exception reads:
(1) You will not be considered to have been separated from employment for a disqualifying reason when:
(a) Your employer takes the first action in the separation process by announcing in writing to its employees that:
(i) The employer plans to reduce its work force through a layoff or reduction in force, and
(ii) That employees can offer to be among those included in the layoff or reduction in force;

*261 (b) You offer to be one of the employees included in the layoff or reduction in force; and
(c) Your employer takes the final action in the separation process by accepting your offer to be one of the employees included in the layoff or reduction in force, thereby ending your employment relationship.
(2) This section does not apply to situations where an employer modifies benefits or otherwise encourages early retirement or early separation, but the employer and employee do not follow the steps in subsection (1)(a) through (c).
WAC 192-150-100. Subsection (1) of the "employer-initiated layoff" exception has three requirements: "announcement of RIF" (subsection (a)), "employee offer" (subsection (b)), and "employer final action" (subsection (c)). All three requirements must be satisfied in order for the employee to qualify for the exception.

C. The "Employer Final Action" Requirement
¶ 18 Verizon argues, among other things, that it did not take the "final action" in the separation process, as required by WAC 192-150-100(1)(c). A brief history of the requirement is instructive. The "employer final action" requirement sprang from Court of Appeals opinions construing former WAC 192-16-070 (1993), repealed by Wash. St. Reg. XX-XX-XXX (June 24, 2001), the predecessor to the regulation in question here. The previous version of the "employer-initiated layoff" exception in former WAC 192-16-070 read:
A layoff or reduction-in-force will not be considered to be a voluntary quit pursuant to RCW 50.20.050, if:
(1) The employer announced a layoff or reduction-in-force; and
(2) The claimant volunteered to be one of the people included in the layoff or reduction-in-force; and
(3) The employer determines [sic] which individuals are laid off or released through a reduction-in-force; and
(4) The employer accordingly laid off or released the claimant due to a reduction-in-force.
¶ 19 By 1998, there was a Court of Appeals division split over the meaning of former WAC 192-16-070. In Ortega v. Employment Security Department, 90 Wash.App. 617, 624-25, 953 P.2d 827 (1998), Division One held that in order for an employee to qualify for the exception, involuntary layoffs must be part of the same "phase" of the RIF in which the employee volunteers to participate.[6] In Nielsen v. Employment Security Department, 93 Wash.App. 21, 966 P.2d 399 (1998), a case arising from the very same factual record as Ortega, Division Three held that the plaintiff did qualify for the "employer-initiated layoff" exception despite participating in the "voluntary" rather than "mandatory" phase of the RIF. Id. at 37, 966 P.2d 399. Nielsen relied on the reasoning in Morillo v. Director of Division of Employment Security, 394 Mass. 765, 477 N.E.2d 412 (1985), in which the Massachusetts Supreme Court held that whenever the employer takes the initial and final actions in the termination process, the termination is not "voluntary" and does not disqualify the employee from receiving benefits. Nielsen, 93 Wash.App. at 38-39, 966 P.2d 399 (citing Morillo, 477 N.E.2d. at 413).
¶ 20 The ESD responded to the conflicting Court of Appeals opinions by announcing that it intended to rewrite the rule to "clarify[] that an individual who volunteers for layoff will not be considered to have separated from work for a disqualifying reason when the layoff is initiated and announced by the employer and the employer takes the final action to terminate" the employee. Wash. St. Reg. XX-XX-XXX (Feb. 5, 2001) (emphasis added). The resulting rule was WAC 192-150-100, the rule at issue here.

D. The Commissioner's Rulings
¶ 21 The Commissioner concluded that Verizon took the "final action" to terminate the employees within the meaning of *262 WAC 192-150-100(1)(c) by selecting the employees to whom it offered the MVSP, automatically accepting those who volunteered and "retaining the power to reject those ... who were not eligible for such participation." CR at 1089.
¶ 22 The Commissioner implicitly recognized that for an employer to take the "final action," the employer must retain the right to reject employees who volunteer for the program. To that extent, she was correct. But she incorrectly concluded that the employees were entitled to summary judgment that Verizon retained that power here and thus took the "final action" in the termination.
¶ 23 Historical regulations and case law demonstrate that in order to take the "final action," employers must retain the right to choose which employees to accept to the program after the employees have volunteered. In the rule making process for WAC 192-150-100, the ESD expressly declared that the new rule would only "clarif[y], but... not change, existing policy and procedure." Wash. St. Reg. XX-XX-XXX (Feb. 5, 2001). Accordingly, the text of its predecessor, former WAC 192-16-070, is instructive. It applied when: (1) the employer announced a layoff, (2) the claimant was among those who volunteered, and (3) the employer determined which of the volunteers to lay off. Former WAC 192-16-070. These steps were plainly chronological and required the employer to retain control over the offer after the employee accepted.[7].
¶ 24 The Nielsen decision also indicates that the rule requires employers to retain the right to reject volunteering employees. Nielsen is particularly persuasive because the ESD revised the rule expressly to resolve the Court of Appeals division split, in which Nielsen was one of the conflicting opinions. Wash. St. Reg. XX-XX-XXX (Feb. 5, 2001). The ESD adopted the Nielsen "first and last action" framework when it wrote the current WAC 192-150-100. The Nielsen court in turn had lauded the "first and last action" reasoning in Morillo, recognizing that the Morillo court had held that an employer took the last action when it "retained the authority to accept the application and release the employee or reject it." Nielsen, 93 Wash. App. at 38-39, 966 P.2d 399.
¶ 25 Consistent with Nielsen, both Washington cases interpreting the "final action" requirement in the new WAC 192-150-100(1)(c) conclude that in order to take the "final action," an employer must reserve the right to reject employee participation in a separation program. Employees of Intalco Alum. Corp. v. Employment Sec. Dep't, 128 Wash.App. 121, 130, 114 P.3d 675 (2005); Broschart v. Employment Sec. Dep't, 123 Wash.App. 257, 268, 95 P.3d 356 (2004). In Intalco, the company offered voluntary separation packages to employees and gave those packages to all volunteering employees. 128 Wash.App. at 130, 114 P.3d 675. Division One concluded that "[o]nce Intalco's offer was formally accepted, the deal was binding on Intalco. Under these circumstances, the employees who accepted the severance package took the final action in the separation process." Id.
¶ 26 The Commissioner's ruling suggests that Verizon exercised its right to accept or reject volunteers in advance by preselecting a subgroup of employees to whom it initially offered the MVSP. However, neither the plain language nor the history of the rule requires that the program be offered to all employees. Even if Verizon had offered the program to a small subset of employees (which it did not[8]), each individual employee still took the "final action" by deciding to participate in the program.[9]
*263 ¶ 27 We hold that the Commissioner erred in concluding that the employees were entitled to summary judgment that Verizon took the "final action" here. The record contains no evidence that Verizon retained the power to reject volunteering employees. In fact, the ESD concedes that "once an election to participate took place, Verizon retained no control over who elected to participate."[10] Resp't's Br. at 22.
¶ 28 We further hold that Verizon is entitled to summary judgment that it did not take the "final action." The undisputed facts show that the employees themselves took the "final action" in their separation process. Verizon offered the MVSP to employees, it did not reserve the right to reject any of the offerees, and it did, in fact, accept every employee who chose to participate according to the MVSP terms. Also undisputed is the fact that Verizon gave those employees who had already accepted the MVSP offer an eight-day period in which to rescind their acceptances. At every stage after Verizon made the MSVP offer, the employees were in control of whether they participated in the program. The employees, not Verizon, took the final action to end their employment. Accordingly, the employees who did leave Verizon did so voluntarily under the "good cause" rule, and they are not entitled to unemployment benefits.

IV. Conclusion
¶ 29 This court reverses the Commissioner's decision and enters summary judgment in favor of Verizon because it did not take the "final action" within the meaning of WAC 192-150-100(1)(c).
WE CONCUR: GERRY L. ALEXANDER, C.J., CHARLES W. JOHNSON, MARY E. FAIRHURST, JAMES M. JOHNSON, RICHARD B. SANDERS, DEBRA L. STEPHENS, JJ.
CHAMBERS, J. (dissenting).
¶ 30 I agree with the employment security commissioner and the trial judge. If the employer effectively takes the final step by accepting an employee's application to participate in a voluntary force reduction, the employee has not left employment "voluntarily" and "without good cause." Based upon the plain language of WAC 192-150-100, such employees are eligible for unemployment benefits. Cf. Spain v. Employment Sec. Dep't, ___ Wash.2d ___, 185 P.3d 1188 (2008). I disagree with the majority's conclusion that the employer does not take the final step, and thus the employee is not eligible for benefits, if the employee retains the right to rescind the offer to participate in a force reduction program. The majority's approach is inconsistent not only with the letter of the regulation, but also its spirit. I respectfully dissent.
¶ 31 I fear the majority is ignoring the widely accepted realities of large company layoffs. The agreement to participate in a voluntary reduction in force program is not, meaningfully, a voluntary decision to leave a job without good cause. Our administrative rules recognize this. An employee is placed between the proverbial rock and a hard spot when her employer announces that the company is going to lay off a substantial number of employees and the employee is one of those at risk. She can close her eyes, hold her breath, and hope that she is not one of the employees fired. But if she is one of the unfortunate ones laid off, she risks losing the *264 income stream necessary to pay her bills. Alternatively, she can choose to participate in a force reduction program. Reduction in force programs can be a comparatively humane and sensible way to mitigate some of the worst pain and uncertainty of a layoff. But rarely are either of these choices, the rock or the hard spot, nearly as desirous as continued employment with a company for whom the employee has established a work history and gained some seniority.
¶ 32 When and whether an employee has left "voluntarily" when facing an involuntary layoff has long divided Washington courts. Compare Nielsen v. Employment Sec. Dep't, 93 Wash.App. 21, 37, 966 P.2d 399 (1998), with Broschart v. Employment Sec. Dep't, 123 Wash.App. 257, 95 P.3d 356 (2004). While all these programs are, in a formal sense, voluntary, as the Court of Appeals rightly noted once, "[t]o characterize these terminations as `voluntary' in this context is semantic sleight-of-hand that is irreconcilable with our charge to narrowly confine disqualifying exceptions." Nielsen, 93 Wash.App. at 37, 966 P.2d 399. The rules must be read with this wise injunction in mind.
¶ 33 In this case, I simply agree with the employment security commissioner and the trial judge that the employees before us are entitled to benefits. The reality is that however "voluntary" a resignation may appear on paper, our State recognizes that sometimes substance must trump form. Thus, under our rules:
You will not be considered to have been separated from employment for a disqualifying reason when:
(a) Your employer takes the first action in the separation process by announcing in writing to its employees that:
(i) The employer plans to reduce its work force through a layoff or reduction in force, and
(ii) That employees can offer to be among those included in the layoff or reduction in force;
(b) You offer to be one of the employees included in the layoff or reduction in force; and
(c) Your employer takes the final action in the separation process by accepting your offer to be one of the employees included in the layoff or reduction in force, thereby ending your employment relationship.
WAC 192-150-100(1). I part company from my colleagues only at step three: whether Verizon took the final action. In my view, it did. It took the final action by accepting the offer to resign. It undermines the regulation to hold that the employer did not take the final action if employees could (but did not) rescind their offers. I do not think the court should change established policy by reading into the regulation such an exception.
¶ 34 I see no reason why we should import into this plain rule a requirement that the employer has taken the final action only if the employee has the power to reject a resignation. I believe the plain language here is plain enough. Verizon took the final action by accepting the resignations. These employees are eligible.
¶ 35 I respectfully dissent.
WE CONCUR: Justice BARBARA A. MADSEN.
NOTES
[1] Verizon has an interest in the matter because the State charges unemployment benefit payments for former Verizon employees to Verizon's unemployment experience rating account. See RCW 50.24.010; chapter 50.29 RCW.
[2] There is nothing in the record establishing that this purely voluntary program fulfilled the WAC 192-150-100(1)(a) "announcement of RIF" requirement, The dissent's conclusion assumes that a RIF was inevitable and that employees had no meaningful choice whether to participate, but that is not supported in the record.
[3] It is curious that the ALJ made "findings of fact." The ALJ never served as a fact finder because she decided the case on summary judgment.
[4] Both parties have argued at one time or another that we should review factual determinations under the APA "substantial evidence" standard, RCW 34.05.570(3)(e). The propriety of summary judgment is a question of law, Osborn v. Mason County, 157 Wash.2d 18, 22, 134 P.3d 197 (2006), thus the "substantial evidence" standard is not appropriate here.
[5] WAC 192-150-100 is an interpretive rule promulgated by the ESD. Wash. St. Reg. XX-XX-XXX (Feb. 5, 2001).
[6] This holding was consistent with Division One's earlier holding in Anheuser Busch, Inc. v. Goewert, 82 Wash.App. 753, 919 P.2d 106 (1996).
[7] The ESD argues that Verizon took the final action when it "coerc[ed employees] to participate" in the program by making it known that reductions in force were necessary. Resp't's Br. at 22-26. This argument goes to the question of whether involuntary reductions in force were inevitable under the case law interpreting the "announcement of RIF" requirement in WAC 192-150-100(1)(a), not to whether Verizon took the "final action" under subsection (1)(c).
[8] Verizon offered the program to "[a]lmost all management and nonunion employees." CR at 939.
[9] The ESD also argues that Verizon's "Volunteer Confirmation" screen, CR at 847, which appeared after an employee chose to participate in the program, constituted the "final action." The Intalco court correctly noted that the employer's act of processing clerical paperwork terminating employment does not negate the employee's control over the final decision. 128 Wash.App. at 129-30, 114 P.3d 675. To infer "final action" when an employer sends an automated confirmation that it has received the employee's acceptance would achieve the absurd result of prohibiting employers from communicating further with volunteering employees, even to acknowledge receipt of correspondence.
[10] The Commissioner concluded that Verizon "retain[e]d the power to reject those employees who were not eligible." CR at 1089. The only evidence in the record supporting this conclusion is the initial "Notification Letter" informing employees of the plan, which contained an attachment outlining eligibility requirements for the MVSP. CR at 843-45. It warned that some ineligible employees might have received the letter in error. In the case of erroneous recipients, Verizon made it clear that it was not making any offer at all: "It is possible that you are not eligible for the program and received this notice in error. Receipt of this notice does not confer any rights or entitlement to benefits under the voluntary separation program." CR at 845.