[No. 29228-2-III.   Division Three.   July 19, 2011.]

KIM TURNBOW, *Appellant*, v. THE EMPLOYMENT SECURITY DEPARTMENT, *Respondent*.

*Kim Turnbow*, pro se.

*Robert M. McKenna, Attorney General*, and *Charnelle M. Bjelkengren, Assistant*, for respondent.

¶1 SWEENEY, J. — A self-employed person is generally not entitled to unemployment benefits. But a self-employed person who remains available for work and whose start-up business remains "contingent" is entitled to unemployment benefits. We conclude that the Employment Security Department hearings examiner applied the wrong legal standard to deny the appellant unemployment benefits here, and we reverse the decision of the superior court that affirmed the decision to deny benefits.

## FACTS

¶2 Kim Turnbow was a finance and insurance manager for new car dealerships until the decline of the automobile industry in 2008. In October 2008, Ms. Turnbow began seeking independent contracts as an insurance agent. She

worked for Orion Insurance Group from March 1 until May 6, 2009, when she quit because of a disagreement. Ms. Turnbow then filed a claim for unemployment benefits.

¶3 In May 2009, Ms. Turnbow took steps to start her own insurance agency. She formed a corporation and sought appointments from insurance carriers. She also looked for work as an independent insurance agent at several insurance companies. She ultimately secured a contract as an insurance agent with Aflac Insurance on June 5. And she accepted a sales job with Low Miles Used Cars on June 6. Low Miles's owner, however, told Ms. Turnbow he could not pay her the agreed-upon commission rate, so she never started that job.

¶4 The Employment Security Department (Department) denied Ms. Turnbow's claims for unemployment benefits on the grounds that she quit her job at Orion without good cause and that she was "not available for work as an employee" in May. Administrative Record (AR) at 57, 136-37. Ms. Turnbow appealed the Department's decision to the Office of Administrative Hearings. Her appeal proceeded to hearing. An administrative law judge (ALJ) concluded that Ms. Turnbow's separation from Orion did not disqualify her from receiving unemployment benefits but that she was ineligible for unemployment benefits because her self-employment venture was not contingent and she was not available for work:

> [Ms. Turnbow's] primary objective, which she has largely achieved, has been to establish her own business as an independent contractor. Although she has applied for regular employment, she did not really want, and did not begin, a job that she accepted. [Ms. Turnbow's] self-employment was not contingent upon her not obtaining employment[.] Rather the reverse was true. If her self-employment failed, [Ms. Turnbow] was going to fall back on regular employment.

AR at 190.

¶5 Ms. Turnbow appealed the ALJ's decision of ineligibility to the commissioner of the Department, challenging

the findings that her start-up business was not contingent and that she was not available for work. The commissioner adopted the ALJ's findings and conclusions and affirmed the decision that Ms. Turnbow was ineligible for unemployment benefits because she was self-employed full time and, therefore, was not available for work during the weeks she claimed benefits.

¶6 Ms. Turnbow appealed the commissioner's order to the superior court. She again challenged the sufficiency of the findings that (1) regular employment was her back-up plan to self-employment and (2) she accepted an offer of regular employment but did not want it and never started it. She also challenged the conclusions that self-employment disqualified her from benefits under RCW 50.20.010(1)(c) and *Kenna v. Department of Employment Security*, 14 Wn. App. 898, 545 P.2d 1248 (1976). The superior court affirmed the commissioner's decision. Ms. Turnbow appeals the superior court's order.

## DISCUSSION

¶7 Ms. Turnbow contends that the superior court erroneously found she was not available for work and ineligible for unemployment benefits. First, the superior court did not find that Ms. Turnbow was not available for work. More importantly, we review the findings and conclusions of the ALJ and do not defer to the decision of the superior court. *Verizon Nw., Inc. v. Emp't Sec. Dep't*, 164 Wn.2d 909, 915, 194 P.3d 255 (2008); *Tapper v. Emp't Sec. Dep't*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993). We review only the Department's final decision, using the agency record, and we apply the Washington Administrative Procedure Act, chapter 34.05 RCW. *Tapper*, 122 Wn.2d at 402.

¶8 In this case, the decision of the Department's commissioner was the final decision. We may reverse that decision if its findings are not based on substantial evidence or if the decision itself is based on an error of law. *Id.* (citing RCW 34.05.570(3)). "Substantial evidence" is any evidence

that could show a challenged finding is true. *Affordable Cabs, Inc. v. Emp't Sec. Dep't*, 124 Wn. App. 361, 367, 101 P.3d 440 (2004). We review errors of law de novo. *Tapper*, 122 Wn.2d at 403; *Affordable Cabs*, 124 Wn. App. at 367.

¶9 The Employment Security Act, Title 50 RCW, governs unemployment benefits. To receive benefits, an unemployed person must, among other things, be able and "available for work in any trade, occupation, profession, or business for which he or she is reasonably fitted." RCW 50.20.010(1)(c). Generally, a person who is self-employed is not unemployed. *Kenna*, 14 Wn. App. at 902. But simply being self-employed does not mean a person is automatically ineligible for unemployment benefits. *Bartel v. Emp't Sec. Dep't*, 60 Wn.2d 709, 719, 375 P.2d 154 (1962). A person is unemployed (1) any week she performs no services and is entitled to no pay or (2) any week she works less than full time if her pay is less than one and one-third times her weekly benefit amount plus five dollars. RCW 50.04.310(1).

¶10 An unemployed person who starts her own business remains eligible for unemployment benefits "as long as the establishment of the new business remains contingent" and she is available for work. *Kenna*, 14 Wn. App. at 900-01. Ms. Turnbow maintains that she satisfied this test—she was unemployed, available for work, and willing to take any job from May 6 to June 6, 2009. But the commissioner found and concluded otherwise. We, therefore, consider whether the commissioner properly applied the test and whether the record supports the finding that Ms. Turnbow was not available for work because her business, First Rate Insurance, was "not contingent." AR at 189, 190; *see Tapper*, 122 Wn.2d at 402 (explaining standards of review).

¶11 The commissioner adopted the ALJ's finding that Ms. Turnbow's "efforts to become self-employed were not contingent upon her not finding regular employment. Instead, her effort to find employment was a back-up plan in case her self-employment failed." AR at 189. Ms. Turnbow says this is wrong.

¶12 In *Kenna*, the respondent had been laid off and attempted to become reemployed by looking simultaneously for a salaried position and starting his own business. 14 Wn. App. at 899-900. The Department found that the respondent was self-employed and in full control of his hours and denied the respondent's claim for unemployment benefits. *Id.* at 900. The court reversed the Department's decision. *Id.* at 905. It concluded that the respondent was eligible for benefits because the record showed his proposed business was still contingent. *Id.* at 903, 905. The court acknowledged that the respondent had reserved a corporate name and contacted potential investors, lenders, and suppliers in an effort to establish his own business. *Id.* at 900. But it concluded that the respondent's business had yet to hatch: "[T]he reality was that at all times herein [respondent's proposed business] was in a purely embryonic stage." *Id.* at 903. In other words, the respondent had yet to incorporate his business and his business had yet to earn money or even solicit, accept, or fill orders. *Id.* at 900, 903.

¶13 Thus, the question of whether a proposed business remains contingent does not refer to whether self-employment is the claimant's primary or secondary goal. The Employment Security Act does not prefer one form of reemployment over another: "The policy of the law is as well served by a worker who is able to get off the unemployment rolls by establishing his or her own business as it is by one who does so by getting a job with another employer. In both instances, unemployment is reduced and the suffering caused thereby is minimized." *Id.* at 904.

¶14 The question of contingency, instead, refers to the difference between setting up a self-owned business and running one:

> It would seem that the act of seeking self-employment bears the same relation to self-employment that an egg bears to a chicken. In each instance the former may well become the latter, but first it must hatch.

*Id.* at 903 (emphasis omitted).

¶15 The record shows Ms. Turnbow's business, First Rate Insurance, was still contingent. She had incorporated her business and had appointments with a few insurance carriers but not enough carriers to open her business. And there is no evidence that First Rate Insurance made any money or solicited or sold any policies between May 6 and June 5 (the day she accepted a job with Aflac). We, therefore, conclude that the commissioner's finding of no contingency is error.

¶16 To be available for work, a person must (1) be ready, able, and willing immediately to accept any suitable work offer and (2) actively seek work pursuant to customary trade practices. RCW 50.20.010(1)(c)(ii). The commissioner appears to have found that Ms. Turnbow was not available for work for two reasons. First, the commissioner found Ms. Turnbow was unwilling to accept offers of regular employment. *See* AR at 189 (finding that Ms. Turnbow "applied for jobs, but only accepted one that she did not really want and never started"). The record does not support this finding. Ms. Turnbow repeatedly stated that she did not want to be a regular employee—she wanted to be an independent contractor. But she, nevertheless, applied for and took a sales job with Low Miles Used Cars on June 6. She never started the job, not because she did not want it, but because the employer told her it could not pay what it had agreed to pay her. Ms. Turnbow did not want to compromise the job she got with Aflac on June 5, so she never went to work for Low Miles Used Cars. Thus, while Ms. Turnbow preferred independent contract work, she was willing to accept offers of regular employment.

¶17 The commissioner also found that Ms. Turnbow was not available for work because she was self-employed full time. He noted that the Department has a general rule that self-employment is full-time work:

> "Self-employment" or "independent contractor" status for a claimant generally connotes autonomy in deciding the conditions under which he or she will perform services. Since one of the areas in which a self-employed claimant normally exercises

autonomy is that of when and for how long he or she will work, we have generally considered any amount of time worked to be full-time.

Clerk's Papers at 9. The Department appears to apply this general rule as a matter of law. But "[w]hether a person is self-employed . . . is a question of fact to be determined in each case." *Kenna*, 14 Wn. App. at 902; *accord Bartel*, 60 Wn.2d at 719 ("Each case must be decided upon its own circumstances."). The following five factors are relevant to determining whether and to what extent Ms. Turnbow was self-employed:

1.  Her availability to resume regular employment;
2.  The number of hours she devoted per week to self-employment activity;
3.  The net income she earned from the activity;
4.  The nature of her regular employment; and
5.  Whether and to what extent she engages in the same activities in her regular employment.

*Kenna*, 14 Wn. App. at 902.

¶18 Applying these factors to this record shows Ms. Turnbow was not self-employed full time between May 6 and June 6. She was not self-employed at all. From May 6 up to June 6, Ms. Turnbow spent 90 hours per week not only attempting to set up First Rate Insurance but also applying for regular employment and seeking independent contracts with insurance companies. She earned no money from these efforts. The Department determined that Ms. Turnbow pursued insurance companies for only self-employment purposes. The record does not support that determination. Ms. Turnbow pursued insurance companies so she could be either (1) self-employed, selling several insurance companies' products, or (2) independently contracted with one insurance company, selling only that company's products. Both were reasonable avenues to become reemployed. She pursued them simultaneously, and the latter bore fruit first when Ms. Turnbow became an independent insurance agent for Aflac Insurance on June 5.

¶19 First Rate Insurance was Ms. Turnbow's only attempt at self-employment. And it never opened for business. The evidence, then, does not support the commissioner's finding that Ms. Turnbow was self-employed full time during the weeks at issue. She was seeking self-employment but, even so, was unemployed and eligible for unemployment benefits.

¶20 The commissioner's findings that Ms. Turnbow was not available for work and that her business was not contingent are not supported by substantial evidence and are further based on a flawed legal criteria.

¶21 We reverse the decision of the superior court.

KULIK, C.J., and BROWN, J., concur.