# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| WASHINGTON STATE DEPARTMENT OF LABOR AND INDUSTRIES, | No. 48842-6-II |
| Respondent, | |
| v. | |
| DOUG and ALICE KRISTENSEN, | UNPUBLISHED OPINION |
| Appellants. | |

SUTTON, J. — Alice and Doug Kristensen installed and operated a single-family use residential tram, which the Department of Labor and Industries (Department) inspected and approved in the 1990's as complying with all relevant safety regulations. In 2012, the Department changed its mind and issued a red-tag,[1] requiring the Kristensens to stop operating the tram due to safety concerns about the car safety hook. We hold that there are no genuine issues of material fact and the Kristensens established that the Department is equitably estopped from red-tagging their tram. Thus, we reverse the superior court's order and affirm the administrative law judge's (ALJ) final corrected order granting summary judgment to the Kristensens and ordering the red-tag to be removed. Because we hold that equitable estoppel applies, and that the Department's actions were not substantially justified, we also hold that the Kristensens are a qualified party who prevailed in a judicial action under RCW 4.84.350(1). Upon their compliance with RAP 18.1(a),

---

[1] A red-tag is an order to cease operation of an elevator or other conveyance under RCW 70.87.145. *See* WAC 296-96-00700.

we award the Kristensens' reasonable attorney fees and costs on appeal, not to exceed $25,000. And because the superior court did not rule on the merits of the Kristensens' request for attorney fees and costs during judicial review, we remand to the superior court to make this determination.

FACTS

I. BACKGROUND

A. THE DEPARTMENT'S APPROVAL TO INSTALL THE TRAM

In 1989, the Kristensens purchased a home which did not have road access. That same year, the Kristensens submitted an application to install a single-family use residential tram manufactured by Rehmke Products Corporation (Rehmke) to the Department. The application specified that the emergency braking mechanism (car safety) was a "Positive Engagement Hook—on Car." Administrative Record (AR) at 222.

The safety regulation in effect at the time required two parts for the car safety: "[t]he car safety shall be of the Type A or B and operated by a speed governor."[2] Former WAC 296-94-170(2) (1986), *repealed by* Wash. St. Reg. 01-02-026 (Jan. 22, 2001); AR at 163, 166-67. A Type A and B safety applies pressure to guide rails to stop the tram.[3] AR at 183. Instead of using a Type A or B safety, the Rehmke tram used a safety hook that caught on a cross bar if the suspension cable broke, if excessive speed occurred, or if the hoisting system failed. The safety hook did not

---

[2] A "speed governor" continuously monitors speed and activates the car safety if the tram reaches a set speed. AR at 182.

[3] Former WAC 296-94-170(2) did not define a Type A or B car safety. The description we use is from the national elevator safety standards in effect at the time from the American Society of Mechanical Engineers and the American National Standards Institute (ASME/ANSI). *Safety Code for Elevators and Escalators*, ASME/ANSI A17.1-1987; AR at 183. The legislature directed the Department to consider ASME/ANSI standards before adopting its rules. RCW 70.87.030.

comply with the regulation. The Rehmke tram also had an internal "full-time" speed governor that, unlike a traditional speed governor, did not rely on a set speed to be activated, but was activated as soon as the tram moved downhill, preventing the tram from overspeeding. AR at 253.

In September of 1989, despite the fact that the Rehmke tram did not meet the safety regulation, the Department approved the Kristensens' application and issued an installation permit. The Kristensens purchased the Rehmke tram (tram) and it was installed in June 1990.

B.  THE DEPARTMENT ISSUED AN APPROVAL TO OPERATE THE TRAM

After installation, the Department inspected the tram twice and required additional work for the tram to pass final inspection. But the Department did not require any corrections or modifications to the car safety during these inspections.

In March 1991, the Department inspected the tram and reported that "all acceptance tests [were] performed [and] [n]o apparent deficiencies were found."[4] AR at 115. In July 1992, the Department inspected the tram again and required three corrections, including an external speed governor. The Kristensens purchased the additional components, including the additional speed governor, at a cost of $4,773.[5] In November 1992, the Department issued an operating permit for the Kristensens' tram.

---

[4] A test of the car safety was required before the tram was put into service. Former WAC 296-94-170(9).

[5] In total, the Kristensens spent approximately $65,000 to permit, purchase, and install the tram.

In 1994, the Kristensens applied to install the external speed governor, required by the Department. After installation, the Department inspected the tram and reported that "the modernization/alteration work on this conveyance[6] has been inspected and no apparent deficiencies were noted." AR at 120. After this final alteration in 1994, the Kristensens' tram contained the following car safety system: two speed governors and a safety hook that activated at a set speed.

C. THE DEPARTMENT LEARNS OF SAFETY CONCERNS

In 1998, tram maintenance representatives advised the Department that the Rehmke safety hook was a safety concern. The Department conducted a safety test that year in which the safety hook failed by not catching the initial cross bar, bending the cross bar when it did catch, and freefalling before catching a cross bar.

Ten years later in 2008, the Department sent out letters to all Rehmke residential tram owners notifying them of the "potential unsafe condition" of the Rehmke safety hook. AR at 178-79. The letter stated,

> The problem with the Rehmke device is that the car may achieve too much speed prior to the application of the safety hook.
>
> . . . .
>
> Although the Rehmke hook, as long as it is maintained, will at least stop the lift and hold it in place, I do not want to see any injuries as a result of its operation.
>
> . . . .
>
> The department will take further steps to bring these lifts into compliance but we would prefer that you first work with licensed companies to mitigate these issues.

AR at 178-79.

---

[6] A tram is a conveyance under RCW 70.87.010(6).

D.  THE DEPARTMENT'S RED-TAG

In December 2012, when the Kristensens did not voluntarily respond to the Department's request to address the safety issue, the Department issued a red-tag, ordering the Kristensens to cease operating the tram because the tram used a safety hook that the Department considered to be unsafe.

The tram was the Kristensens primary means of ingress and egress to their home.  The tram was not open to the public, and it was not relocated or altered after the Department's last inspection in 1997.  Nor had the Kristensens' tram been involved in any accidents.

## II.  PROCEDURE

The Kristensens appealed the red-tag to the Office of Administrative Hearings.  After the Kristensens filed a trial brief and filed a motion for summary judgment, the ALJ conducted a summary judgment hearing.  The Kristensens and Department representatives submitted declarations and exhibits as to the above facts.  The Kristensens argued that equitable estoppel applies to bar the Department from red-tagging their tram.  The Kristensens also argued that the Department acted inconsistently by now claiming that the tram never complied with the car safety regulations, despite the Department's previous tests, inspections, and approval of their tram 20 years earlier.

During the hearing, the Department's chief conveyance inspector submitted a declaration that stated that "it is regrettable" that the Department "approved" the Kristensens' tram installation application and operating permit when the safety hook did not comply with the safety regulations at the time of the initial permit in 1989.  AR at 195.  The inspector further stated that the "non-

compliant safety hook has posed a safety hazard from the beginning and that the safety hazard . . . increases with the passage of time." AR at 196.

The ALJ ruled that there were no genuine issues of material fact and that the Kristensens were entitled to summary judgment as a matter of law. The ALJ also ruled that the Department was equitably estopped from red-tagging the Kristensen tram because the Department approved the tram 20 years earlier and cannot now argue that the tram is non-compliant and should cease operation until corrected. After additional briefing and argument, the ALJ denied the Department's motion for reconsideration and issued a corrected final order, ordering that the red-tag be removed from the tram.

The Department petitioned for judicial review to Thurston County Superior Court. The superior court reversed the ALJ order and remanded the matter for a hearing on the merits. The Kristensens appeal.

## ANALYSIS

The Kristensens argue that the Department is equitably estopped from red-tagging their tram. We agree.

### I. LEGAL PRINCIPLES

#### A. THE ADMINISTRATIVE PROCEDURE ACT

The Administrative Procedure Act (APA) governs the appeal of a Department's red-tag. RCW 34.05.526; 70.87.145, .170(4); WAC 296-96-00805(1). We review the ALJ's final order de novo and we apply the APA standards of review under RCW 34.05.570 directly to the agency's record, not to the superior court's decision. *Postema v. Pollution Control Hearings Bd.*, 142 Wn.2d 68, 77, 11 P.3d 726 (2000). We review the ALJ's legal conclusions under the "error of

law" standard of review under RCW 34.05.570(3)(d). *Verizon Nw.*, *Inc. v. Emp't Sec. Dep't*, 164 Wn.2d 909, 916, 194 P.3d 255 (2008). The Kristensens have the burden to show that the Department's red-tag was invalid. *See* RCW 34.05.570(1)(a).

B. SUMMARY JUDGMENT

Because the original administrative action was decided on summary judgment, we overlay the APA standard of review with the standard of review for a summary judgment motion. *Verizon,* 164 Wn.2d at 916. We view the facts in the light most favorable to the non-moving party on a summary judgment motion. *Verizon*, 164 Wn.2d at 916. We uphold a summary judgment ruling if the undisputed material facts entitle the moving party to judgment as a matter of law. *Verizon*, 164 Wn.2d at 916.

C. THE DEPARTMENT'S AUTHORITY

1. Authority Over All Conveyances

The Department's authority related to conveyances is "to provide for safety of life and limb . . . and to ensure the safe design, mechanical and electrical operation, and inspection of conveyances . . . [in order to prevent serious injury] to *employees* and the *public* exposed to unsafe conditions." RCW 70.87.020(1) (emphasis added). All conveyances must "be reasonably safe to persons and property" and must comply with the Department's rules in effect at permit issuance, "regardless of whether the rule(s) [have since] been repealed." WAC 296-96-00500(2), -00600, -07021.

All privately owned conveyances are subject to the provisions of RCW 70.87 "except as specifically excluded by this chapter." RCW 70.87.040. It is undisputed that the Kristensens'

tram is a "private residence conveyance" for single-family use under RCW 70.87.010(33) and that the Kristensens' tram is not open to the public.

2. Limited Authority Over Single-Family Use Residential Trams

Generally, the Department must inspect and test conveyances annually. RCW 70.87-.120(2)(a). But in 1997, the legislature limited the Department's authority to inspect single-family use residential trams. LAWS OF 1997, ch. 216 § 2; *see* RCW 70.87.120(2)(b). Under the 1997 amendment, the Department could inspect single-family use residential trams only when they were new, altered, or relocated and an operating permit had been issued, or to "investigate accidents and alleged or apparent violations of this chapter." LAWS OF 1997, ch. 216, § 2; RCW 70.87-.120(2)(b), (4).

The following year in 1998, the legislature also exempted single-family use residential trams from the operating permit requirements in RCW 70.87.090. LAWS OF 1998, ch. 137, § 4; *see* RCW 70.87.120(2)(b)(ii). Thus, after these amendments, single-family use residential trams were no longer subject to an annual operating permit or annual inspection, unless requested by the tram's owner. RCW 70.87.090, .120(2)(b)(i); WAC 296-96-01000(3), -01045(3). In 2004, the legislature further exempted owners (and contractors on their behalf) who perform maintenance on single-family use residential trams from the Department's licensing oversight. LAWS OF 2003-2004, ch. 66, § 3; RCW 70.87.305.

3. Authority to Red-Tag Conveyances

The Department's authority to red-tag a conveyance is set forth in RCW 70.87.145(1), which provides:

> An authorized representative of the department may order the owner or person operating a conveyance to discontinue the operation of a conveyance, and may place a notice that states that the conveyance may not be operated on a conspicuous place in the conveyance, if:
>
> (a) The conveyance work has not been permitted and performed in accordance with this chapter; or
>
> (b) The conveyance has otherwise become unsafe.

The Department's red-tag must be rescinded if the conveyance is fixed or modified to bring it into compliance. RCW 70.87.145(3).

## II. EQUITABLE ESTOPPEL

The Kristensens argue that the Department is equitably estopped from red-tagging their tram. Br. of Appellant at 11. They argue that the Department's red-tag is inconsistent with its prior approvals that the tram complied with the safety regulations. They argue that they reasonably relied on the Department's approvals to their detriment, they were injured, a manifest injustice has occurred, and applying estoppel here would not impair legitimate governmental functions. Because the Kristensens meet all five elements of equitable estoppel and there are no genuine issues of material fact, we agree that the Department is equitably estopped from red-tagging their tram.

"Equitable estoppel prevents a party from taking a position inconsistent with a previous one where inequitable consequences would result." *Silverstreak*, *Inc. v. Dep't of Labor and Indus.*, 159 Wn.2d 868, 887, 154 P.3d 891 (2007). Equitable estoppel against the government is disfavored. *Dep't of Ecology v. Campbell & Gwinn, L.L.C.*, 146 Wn.2d 1, 20, 43 P.3d 4 (2002). When equitable estoppel is asserted against the government, the party asserting it must establish five elements:

9

1) a statement, admission, or act by the party to be estopped, which is inconsistent with its later claims,

2) the asserting party acted in reliance upon the statement or action,

3) injury would result to the asserting party if the other party were allowed to repudiate its prior statement or action,

4) estoppel is "necessary to prevent a manifest injustice," and

5) estoppel will not impair governmental functions.

*Silverstreak,* 159 Wn.2d at 887 (quoting *Kramarevcky v. Dep't of Soc. & Health Servs.,* 122 Wn.2d 738, 743, 863 P.2d 535 (1993)). "'[T]he facts relied upon to establish an equitable estoppel must be clear, positive, and unequivocal in their implication.'" *Colonial Imports, Inc. v. Carlton Nw., Inc.*, 121 Wn.2d 726, 735, 853 P.2d 913 (1993)(quoting 28 Am Jur. 2d *Estoppel and Waiver* § 148, at 831 (1966)).

A.  INCONSISTENT STATEMENT, ADMISSION, OR ACT

The Department argues that the safety hook "has otherwise become unsafe" under RCW 70.87.145(1)(b).  Br. of Resp't at 19.  But, the Department's chief conveyance inspector acknowledged that the "non-compliant safety hook has posed a safety hazard from the beginning." AR 196.  And the Department concedes that its permit and approval of the Kristensens' tram in 1992 violated former WAC 296-94-170(2) because the tram did not have a Type A or B car safety as required.  Br. of Resp't at 19, 23.

It is undisputed that the Department repeatedly permitted, inspected, and approved the tram as complying with safety regulations, which included the car safety hook and the two speed governors.  It is also undisputed that the Department then changed its mind in 2012 and red-tagged the tram because it had determined the tram had become unsafe.  The Department's red-tag is

inconsistent with its prior approvals. We hold that the Kristensens prove the first element of estoppel—inconsistent statement, admission or act.

B. DETRIMENTAL RELIANCE

It is undisputed that the Kristensens spent approximately $65,000 to install and upgrade a non-compliant tram after the Department approved their initial installation permit in 1989. It is undisputed that if the Department had rejected the Kristensens' application to install the Rehmke tram because the safety hook did not comply with the safety regulations, the Kristensens would have chosen to install a tram that met the safety requirements. The Kristensens relied on the Department's approvals prior to purchasing, installing and upgrading a tram that was non-compliant. Thus, we hold that the Kristensens prove the second element of estoppel—detrimental reliance.

C. INJURY

The Kristensens incurred approximately $65,000 in expenses to install and upgrade the tram as approved by the Department. The Department does not directly address this element. Thus, we hold that the Kristensens prove the third element of estoppel—injury.

D. MANIFEST INJUSTICE

The Kristensens argue that the application of equitable estoppel is necessary to prevent a manifest injustice, citing the analysis in *Silverstreak* as analogous to the case here. Br. of Appellant at 14. The Department argues that *Silverstreak* is factually distinguishable because that case involved the Department's change in its interpretation of a regulation, however, this case involves safety enforcement. Br. of Resp't at 29. And the Department argues that it had a duty to address safety issues under RCW 70.87.020(1), which requires safe conveyances. Br. of Resp't at 28.

*Silverstreak* addressed whether the Department was equitably estopped from enforcing its post-bid interpretation of the prevailing wage act because that interpretation was inconsistent with its earlier interpretation in a policy memorandum, which had been relied upon by the suppliers and drivers in submitting their bids. *Silverstreak,* 159 Wn.2d at 886-87. Just as it did here, the Department changed the way it interpreted and applied the regulations and, thus, the reasoning in *Silverstreak* applies:

> If contractors and subcontractors cannot rely on the consistency of clear department interpretations in effect at the time they enter into a contract, they are left to guess at the meaning of regulations. Thus, the result the Department urges us to reach would be not only manifestly unjust but unconstitutional.

*Silverstreak*, 159 Wn.2d at 890. Here, the Kristensens relied on the Department's representations that the tram was safe and proceeded to install and upgrade a non-compliant tram at significant expense. Years later, the Department changed its position and interpretation of its safety regulations which is manifestly unjust. Thus, we hold that the Kristensens prove the fourth element—manifest injustice.

E. IMPAIRING LEGITIMATE GOVERNMENT FUNCTIONS

The Department argues that applying estoppel would "severely impair" and broadly undermine its ability to protect the public from unsafe conveyances under chapter 70.87 RCW. Br. of Resp't at 30. We disagree.

The Department's position is that the tram was always unsafe, and that its duty to ensure the safety of citizens is a legitimate government function. Br. of Resp't at 19, 31. But the Department's vital government function was to assure the safety of the Kristensens' tram *20 years ago*. The 1997, 1998, and 2004 amendments to chapter 70.87 RCW evidence the legislature's

intent to *restrict* the Department's authority over single-family use residential trams except in certain limited circumstances. Applying equitable estoppel here does not prevent the Department from inspecting single-family use residential trams when they are new, altered, or relocated and an operating permit has been issued, or to investigate accidents and alleged or apparent violations of chapter 70.87 RCW. Nor will applying equitable estoppel undermine the Department's broad authority to keep the *public and employees* safe while riding in commercial or multi-family residential conveyances. Viewing the evidence in the light most favorable to the Department, we hold that the Kristensens prove the fifth element of equitable estoppel—not impairing legitimate government functions.

ATTORNEY FEES AND COSTS

The Kristensens request an award of reasonable attorney fees and costs as a qualified party who prevails in a judicial review of an agency action under RCW 4.84.350(1).[7] Br. of Appellant at 18; CP at 60-61.

Under RCW 4.84.350(1), "a court shall award a qualified party that prevails in a judicial review of an agency action fees and other expenses, including reasonable attorneys' fees, unless the court finds that the agency action was substantially justified or that circumstances make an award unjust." "'Substantially justified means justified to a degree that would satisfy a reasonable person.'" *Silverstreak,* 159 Wn.2d at 892 (quoting *Moen v. Spokane City Police Dep't*, 110 Wn. App. 714, 721, 42 P.3d 456 (2002)). The State must show that its position has a reasonable basis

---

[7] RAP 18.1(a) provides that if an applicable law grants a party the right to recover reasonable attorney fees or expenses on appeal, the party must request the award of attorney fees and costs in their brief.

in law and fact. *Constr. Indus. Training Council v. Wash. State Apprenticeship & Training Council,* 96 Wn. App. 59, 68, 977 P.2d 655 (1999). The statute provides a statutory cap on attorney fees for each level of judicial review of an agency action. *Costanich v. Dep't of Soc. & Health Servs.,* 164 Wn.2d 925, 934, 194 P.3d 988 (2008). The amount awarded for each level for judicial review shall not exceed $25,000. RCW 4.84.350(2).

Because we hold that equitable estoppel applies and the Department's actions were not substantially justified, the Kristensens are a qualified party who prevailed in a judicial action under RCW 4.84.350(1). Upon compliance with RAP 18.1(a), we award the Kristensens' reasonable attorney fees and costs on appeal, not to exceed $25,000. And because the superior court did not rule on the merits of the Kristensens' request for attorney fees during judicial review, we remand to the superior court to make this determination.

## CONCLUSION

We hold that there are no genuine issues of material fact and that the Kristensens proved all five elements of equitable estoppel. Thus, we reverse the superior court's order and affirm the ALJ's final corrected order granting summary judgment to the Kristensens and ordering the red-tag to be removed. Because we hold that the Kristensens are a qualified party who prevailed in a judicial action under RCW 4.84.350(1). Upon compliance with RAP 18.1(a), we award them reasonable attorney fees and costs on appeal. But because the superior court did not rule on the

No. 48842-6-II

merits of the Kristensens' request for attorney fees and costs during judicial review, we remand to the superior court to make this determination.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_Sutton, J._
SUTTON, JUDGE

We concur:

_Worswick, J._
WORSWICK, P.J.

_Johanson, J._
JOHANSON, J.

15