# FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE JUN 1 2 2014



CHIEF JUSTICE

This opinion was filed for record
at 8:00 a.m. on June 12, 2014

Ronald R. Carpenter
Supreme Court Clerk

## IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| ROBERT CAMPBELL, | NO. 88772-1 |
| Petitioner, | |
| v. | EN BANC |
| STATE OF WASHINGTON EMPLOYMENT SECURITY DEPARTMENT, | Filed    JUN 1 2 2014 |
| Respondent. | |

STEPHENS, J.—Robert Campbell quit his job as a school teacher in anticipation of accompanying his wife to Finland on her Fulbright grant. Campbell applied for unemployment benefits for the months between his resignation in June 2010 and his family's planned departure in February 2011. His request was denied because the Department of Employment Security (Department) determined that Campbell did not qualify for benefits as claimed under RCW 50.20.050(2)(b)(iii),[1] also known as the "quit to follow" provision. This provision requires the

---

[1] RCW 50.20.050 was amended twice in 2009. Unless otherwise specified, all references herein pertain to the version amended by Laws of 2009, chapter 493, section 3. Per RCW 1.12.025, both amendments of RCW 50.20.050 are to be given effect where, as here, the amendments do not conflict.

unemployment claimant to stay in his or her position for "as long as reasonable" before quitting to relocate for a spouse or domestic partner. RCW 50.20.050(2)(b)(iii). On appeal, the superior court reversed, but the Court of Appeals reinstated the agency action. We affirm the Court of Appeals and hold that Campbell's resignation from his job seven months before the planned relocation was not reasonable as contemplated by the statute.

FACTS AND PROCEDURAL HISTORY

Campbell was employed by the University Place School District (District) from August 2004 until June 2010. At the time his job ended, Campbell was teaching Spanish. In late 2009 or early 2010, his wife (also a school teacher) applied for a competitive Fulbright grant. Campbell notified his superiors of his wife's application. In April 2010, Campbell's wife was awarded a grant to fund four months of research in Finland the following year. Campbell asked his superiors for a six-month leave of absence beginning in January 2011 so that he and the couple's three-year-old daughter could also make the move abroad. Administrative Record (AR) at 14. His request was denied because the District believed it would be difficult to replace Campbell for a temporary appointment. Campbell then requested a leave of absence for the entire 2010-2011 school year. The District again denied his request.

Campbell resigned from the District at the close of the 2009-2010 school year in June. He believed professionalism required him to resign prior to the start of the new school year, rather than mid-year. He applied for unemployment

benefits, relying on RCW 50.20.050(2)(b)(iii) as the basis for his request. That provision allows a person to collect unemployment if forced to quit a job in order to relocate for a spouse's or domestic partner's employment, so long as the claimant works as long as reasonably possible in the job he or she is leaving.

The Department denied Campbell's claim, reasoning that his wife was not relocating for a job but to further her schooling through the Fulbright grant. Campbell requested an administrative hearing, and the administrative law judge (ALJ) denied his claim for the same reasons identified by the Department. Campbell appealed to the Department's commissioner. The commissioner adopted the ALJ's ruling, including the reasoning regarding the nature of the Fulbright grant. But the commissioner additionally determined that Campbell had quit his job prematurely and thus failed to satisfy the second prong of RCW 50.20.050(2)(b)(iii).

Campbell petitioned for review of the agency decision, and the Thurston County Superior Court, acting in an appellate capacity, overturned the agency decision. The Department appealed, and the Court of Appeals reversed. The Court of Appeals did not address the Department's determination that a Fulbright grant does not qualify as employment, but it affirmed the agency action on the ground that Campbell did not work in his teaching job as long as reasonably possible before the move to Finland. *Campbell v. Emp't Sec. Dep't*, 174 Wn. App. 210, 215, 297 P.3d 757 (2013). We granted Campbell's petition for review. *Campbell v. Emp't Sec. Dep't*, 178 Wn.2d 1018, 311 P.3d 27 (2013).

ANALYSIS

Our limited review of an agency decision is governed by the Administrative Procedure Act (APA), chapter 34.05 RCW. *Verizon Nw., Inc. v. Emp't Sec. Dep't,* 164 Wn.2d 909, 915, 194 P.3d 255 (2008). We sit in the same position as the superior court and apply the APA standards directly to the administrative record. *Id.* Thus, the decision we review is that of the agency, not of the ALJ or the superior court. *Id.* Unless we determine that a statute or agency rule is constitutionally infirm or otherwise invalid, our APA review of an agency determination is limited to deciding if the decision is based on an error of law, the order is not supported by substantial evidence, or the order is arbitrary and capricious. *See* RCW 34.05.570(3)(a)-(i). We review for substantial evidence in light of the whole record. RCW 34.05.570(3)(e). "Substantial evidence" is evidence of a "'sufficient quantity . . . to persuade a fair-minded person of the truth and correctness'" of the agency action. *Port of Seattle v. Pollution Control Hearings Bd.,* 151 Wn.2d 568, 588, 90 P.3d 659 (2004) (internal quotation marks omitted) (quoting *King County v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd.,* 142 Wn.2d 543, 553, 14 P.3d 133 (2000)). The party challenging the agency action carries the burden to show the decision was in error. RCW 34.05.570(1)(a).

An individual seeking to collect unemployment benefits must demonstrate he left work voluntarily and with good cause. *See* RCW 50.20.050(2)(a). For separations occurring on or after September 6, 2009, the legislature has set forth an exhaustive list of reasons that qualify as good cause to leave work. *Id.* One of

these reasons is the "quit to follow" provision of RCW 50.20.050(2)(b)(iii). The parties agree this is the provision under which Campbell is claiming good cause. The relevant statutes read as follows:

> (2) With respect to separations that occur on or after September 6, 2009:
> (a) An individual shall be disqualified from benefits beginning with the first day of the calendar week in which he or she has left work voluntarily without good cause and thereafter for seven calendar weeks and until he or she has obtained bona fide work in employment covered by this title and earned wages in that employment equal to seven times his or her weekly benefit amount. *Good cause reasons to leave work are limited to reasons listed in (b) of this subsection.*

RCW 50.20.050 (emphasis added).[2] The "quit to follow" provision is found in subsection (b):

> (b) An individual has good cause and is not disqualified from benefits under (a) of this subsection only under the following circumstances:
> . . . .
> (iii) The claimant: (A) Left work to relocate for the employment of a spouse or domestic partner that is outside the existing labor market area; and (B) remained employed as long as was reasonable prior to the move.

RCW 50.20.050(2).

We are bound to give unemployment compensation statutes a liberal construction. RCW 50.01.010; *Daily Herald Co. v. Emp't Sec. Dep't*, 91 Wn.2d 559, 565, 588 P.2d 1157 (1979). The "quit to follow" provision is an important

---

[2] In *Spain v. Employment Security Department*, 164 Wn.2d 252, 260, 185 P.3d 1188 (2008), we held that the statutory list of "good cause" reasons for voluntarily separating from employment in RCW 50.20.050(2)(b) was not exhaustive. Our holding in *Spain* does not apply to the amendments to RCW 50.20.050 contained in Laws of 2009, chapter 493, section 3.

part of our unemployment compensation scheme. It promotes family cohesion by erasing the choice between maintaining a second income and maintaining a family by joining a spouse or domestic partner in a new labor market. *See* Br. of Amicus Curiae Wash. Emp't Lawyers' Ass'n (Br. of WELA) at 8-12. Such a provision is especially important in this modern era of a mobile workforce and dual-earner families. Understanding these considerations, we review the record in this case. On this record we conclude the Department did not err in denying Campbell benefits.

Campbell's decision to quit at the close of the 2009-2010 school year cannot satisfy the requirement that he remain employed as long as reasonable prior to the move. Whether a claimant had good cause to quit his or her job is a mixed question of law and fact. *Terry v. Emp't Sec. Dep't*, 82 Wn. App. 745, 748, 919 P.2d 111 (1996). We review the agency's factual findings for substantial evidence. *Id.* The process of applying the law to the facts is a question of law subject to de novo review. *Tapper v. Emp't Sec. Dep't*, 122 Wn.2d 397, 858 P.2d 494 (1993).

Campbell does not challenge the factual findings here, and thus we accept them as verities in our de novo review. Campbell quit at the end of June 2010, though his wife's Fulbright grant did not begin until February 2011. Campbell argues that his decision was the ethical, professional, and courteous path because it saved the District from the hardship of filling his position mid-year. Pet'r's Suppl. Br. at 4. Such a calculation, Campbell contends, should be factored into the reasonableness determination. *Id.*

In some employment settings, separating prior to beginning a commitment or contract may be preferable to resigning in the middle of such a commitment or contract. The WELA amicus brief argues that "reasonableness" is "contextualized within the facts of each case." Br. of WELA at 14. To the extent this suggests that "reasonableness" is a subjective determination, we reject this assertion. But to the extent that a reasonableness inquiry asks whether a person's actions were objectively reasonable under a particular set of facts, the Court of Appeals may be criticized for taking an inflexible view of the statute's requirements; that court suggested that the reasonableness of the decision to quit may not involve consideration of what is ethical or professional. *See Campbell*, 174 Wn. App. at 217. Nothing in the plain language of the statute limits the consideration of what is objectively reasonable so strictly.

Nonetheless a reviewing court is bound to honor an agency's decision unless it is clearly erroneous. Here, the record reveals the District's valid concern was not simply having to replace Campbell for part of a school year but also finding a replacement for a *limited time.* Administrative Record at 49 (internal communication from District's director of human resources explaining that "[t]he time of year and his endorsed area of teaching would have created a major hardship on the district in trying to fill his role during such a limited absence"). There is no evidence it was the District's preference that Campbell quit at the close of the 2009-2010 school year. Indeed, the District had already denied Campbell's request for a year-long leave of absence, indicating that the hardship the District

perceived arose not from filling Campbell's position mid-year, but from holding the position for him. Moreover, Campbell's decision to resign in June 2010 left the District less than two months to find a replacement for the upcoming school year. While it may be debatable whether it was reasonable of the District to deny Campbell a leave of absence in the first place, that question is not before us. There is no evidentiary support on this record for Campbell's contention that it was reasonable for him, as a matter of professional courtesy, to separate from employment seven months before the move to Finland.[3] Consequently, the agency's decision to deny Campbell unemployment benefits was not clearly erroneous.

## CONCLUSION

This case is controlled by the well-settled standards governing review of an agency action. Although Campbell argues professional and ethical obligations required him to quit his job seven months before his family left the state, when the facts are viewed objectively the Department did not err in concluding Campbell did not work as long as reasonably possible. He therefore failed to satisfy the requirements of the "quit to follow" provision under RCW 50.20.050(2)(b)(iii).[4]

---

[3] It is also worth noting that had Campbell resigned at the close of 2010 in preparation for the February 2011 move, he would not have been eligible to seek unemployment. By his own admission, he did not plan to look for work while in Finland, as required by RCW 50.20.010(1)(c) (explaining that a claimant must be able to, available for, and actively seeking work to qualify for benefits). *See* Pet'r's Suppl. Br. at 5.

[4] Consequently, we do not reach the question of whether the Fulbright grant at issue here qualified as employment.

Stephens, J.

WE CONCUR:

Madsen, C.J.

Wiggins, J.

Gonzalez, J.

Owens, J.

Gordon McCloud, J.

Fairhurst, J.

J.M. Johnson, J.P.T.