IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| JESSICA PEDERSON, | ) | No. 32410-9-III |
| Respondent, | ) | |
| v. | ) | |
| EMPLOYMENT SECURITY DEPARTMENT, STATE OF WASHINGTON, | ) | UNPUBLISHED OPINION |
| Appellant. | ) | |

SIDDOWAY, C.J. — The Employment Security Department (Department) denied

Jessica Pederson's application for unemployment benefits, determining she voluntarily

quit her job without good cause and therefore was disqualified from receiving

unemployment compensation. Because we agree Ms. Pederson did not meet her burden

of showing she had good cause to quit her employment, we affirm.

FACTS AND PROCEDURAL BACKGROUND

Ms. Pederson was interviewed for a position as a shipping assistant at Chukar

Cherry Company (Chukar) in Prosser, Washington. When she reported for her first day

of work, Ms. Pederson discovered she was one of three candidates who would work for three days, after which Chukar would offer a permanent job to the individual who best fit the position. Ms. Pederson continued working for the rest of the day, but did not return after that. She subsequently applied for unemployment benefits. In a "Voluntary Quit Statement" submitted to the Department, Ms. Pederson indicated the main reason she quit was that her co-workers informed her she would be replacing the person who had been translating English to Spanish for her, and she "only [knew] English." Administrative Record (AR) at 47, 51.

The Department issued a written determination notice denying Ms. Pederson unemployment benefits and assessing an overpayment of $1,678.00. Ms. Pederson appealed the determination to the Office of Administrative Hearings, and an administrative law judge (ALJ) issued an initial order setting aside the determination of the Department. The ALJ concluded that Ms. Pederson was not disqualified from receiving unemployment benefits because she had established good cause for quitting work. Specifically, the ALJ found that Chukar "changed the terms of employment from full-time permanent to [three]-day temporary," thereby reducing the hours of employment by more than 25 percent. Clerk's Papers (CP) at 11. Under RCW 50.20.050(2)(b)(vi), "[a]n individual is not disqualified from benefits [when] [t]he individual's usual hours were reduced by twenty-five percent or more."

2

Chukar appealed the initial order to the Commissioner's Review Office. The commissioner issued a final decision setting aside the ALJ's initial order. The commissioner found Ms. Pederson had not met her burden of showing she quit for any of the eleven enumerated good cause reasons set forth in RCW 50.20.050(2)(b), noting that when she arrived for her first day and learned she did not yet have a permanent position, she chose to begin working "[r]ather than leave at that time." CP at 4. Ms. Pederson sought review of the commissioner's decision by the Yakima County Superior Court. Following a hearing, the court entered findings and conclusions and an order affirming the decision of the commissioner. Ms. Pederson timely appealed. The sole issue before this court is whether the commissioner erred in concluding that Ms. Pederson voluntarily quit without good cause.

## ANALYSIS

### I. Standard of Review

The Washington Administrative Procedure Act (APA), chapter 34.05 RCW, governs this court's "limited review" of a final decision by the commissioner of the Department. *Campbell v. Employment Sec. Dep't*, 180 Wn.2d 566, 571, 326 P.3d 713 (2014); RCW 34.05.570(1)(b). Under the APA, a party will be granted relief from an adverse administrative decision if "the [agency] decision is based on an error of law, the order is not supported by substantial evidence, or the order is arbitrary and capricious." *Campbell*, 180 Wn.2d at 571; RCW 34.05.570(3)(a)-(i). We give "substantial weight" to

the agency's interpretations of the law which it is charged with carrying out. *Korte v. Employment Sec.*, 47 Wn. App. 296, 300, 734 P.2d 939 (1987).

A decision by the Department commissioner is considered prima facie correct, *Safeco Ins. Companies v. Meyering*, 102 Wn.2d 385, 391, 687 P.2d 195 (1984), and the party challenging the decision carries the burden of demonstrating its invalidity. *Darkenwald v. Employment Sec. Dep't*, 182 Wn. App. 157, 169, 328 P.3d 977, *review granted*, 337 P.3d 326 (2014); RCW 34.05.570(1)(a). To prevail on appeal, therefore, Ms. Pederson bears the burden of establishing her entitlement to unemployment benefits. *Darkenwald*, 182 Wn. App. at 169.[1]

A review of the decisions of the commissioner and of the ALJ show that the following relevant facts were found:

[1.] [Ms. Pederson] was employed by Chukar Fruit (employer), for 1 day on March 18, 2013. At the time of the job separation, [she] was

---

[1] Ms. Pederson's assignments of error speak of error made by "The Court." Br. of Appellant at 1. In reviewing agency actions, however, this court "sit[s] in the same position as the superior court and appl[ies] the APA standards directly to the administrative record." *Campbell*, 180 Wn.2d at 571; *Tapper v. Employment Sec. Dep't*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993). Because "the decision [the appellate court] reviews is that of the agency . . . not of the superior court," *Campbell*, 180 Wn.2d at 571, we do not give deference to the trial court's rulings. *Verizon Nw., Inc. v. Employment Sec. Dep't*, 164 Wn.2d 909, 915, 194 P.3d 255 (2008); *Waste Mgmt. of Seattle, Inc. v. Utilities & Transp. Comm'n*, 123 Wn.2d 621, 633, 869 P.2d 1034 (1994) ("Assignment of error to the superior court findings and conclusions [are] not necessary in review of an administrative action."). We therefore address only the commissioner's decision, as well as that of the ALJ, "to the extent that the [c]ommissioner adopts the ALJ's findings of fact." *Darkenwald*, 182 Wn. App. at 169.

working full-time as a nonunion Shipping Coordinator earning $9.19 per hour.

[2.] [Ms. Pederson] believed that she had been hired for the job. However, when she arrived at work the first day, she discovered that she would be working for three days and that after that she would be among a group of several candidates from whom the position would be filled. Rather than leave at that time, [she] began working.

[3.] During that same day, co-workers saw [Ms. Pederson's] resume and commented on her qualifications and suggested that she seemed overqualified and ought to look for other work.

[4.] [Ms. Pederson] did not return to work after that. She told the employer that she did not think the job would be a good fit for her.

[5.] If [Ms. Pederson] had not quit when she did, she could have continued working for at least two more days.

CP at 4-5, 10.

Ms. Pederson did not challenge any of these findings before the trial court, nor does she assign error to them on appeal. Unchallenged findings of fact are treated as verities on appeal, and our review is limited to "whether those findings support the commissioner's conclusions of law." *Darkenwald*, 182 Wn. App. at 170; *Tapper*, 122 Wn.2d at 407. We review the commissioner's legal determinations using the "error of law" standard, which permits us to substitute our view of the law for that of the commissioner. *Verizon NW, Inc. v. Employment Sec Dep't*, 164 Wn.2d 909, 915, 194 P.3d 255 (2008). We also review de novo whether the law was correctly applied to the facts as found by the agency. *Silverstreak, Inc. v. Dep't of Labor & Indus.*, 159 Wn.2d 868, 879-80, 154 P.3d 891 (2007).

## II. Employment Security Act

Under Washington's Employment Security Act (Act), chapter 50.01 RCW, a worker who is separated from a job may apply for unemployment benefits by filing a claim with the Department. RCW 50.20.140. To be eligible for benefits, a claimant must show, among other things, that she is able to work, available to immediately accept work, and actively seeking suitable work. RCW 50.20.010(c). The Act's voluntary quit statute, RCW 50.20.050, provides that a claimant is disqualified from receiving benefits if she "left work voluntarily without good cause." RCW 50.20.050(2)(a). The statute sets forth "an exhaustive list of reasons that qualify as good cause to leave work." *Campbell*, 180 Wn.2d at 572; RCW 50.20.050(2)(b).

### A. Ms. Pederson was "employed" by Chukar.

Ms. Pederson asserts that she should not have been disqualified from receiving benefits under the voluntary quit statute because she had only a "working interview," and therefore was never actually employed by Chukar. Br. of Appellant at 5. She emphasizes the following conclusion of law from the commissioner's decision:

> While claimant was undoubtedly disappointed when she learned that she did not yet have a permanent position, what she did have was essentially a working interview. She could have continued working the three days and may well have been given the job. At worst, she would have had three days of pay. . . .

CP at 5. But the commissioner also adopted the ALJ's finding that Ms. Pederson "was employed by Chukar Fruit (employer), for [one] day on March 18, 2013" and that, "[a]t

6

the time of the job separation, [Ms. Pederson] was working full-time as a nonunion Shipping Coordinator earning $9.19 per hour." CP at 9.

Whether a work situation qualifies as "employment" under the Act is a mixed question of law and fact. *Cascade Nursing Servs., Ltd. v. Employment Sec. Dep't*, 71 Wn. App. 23, 30, 856 P.2d 421 (1993). In addressing mixed questions of law and fact, we "give the same deference to the agency's factual findings as in other circumstances, but apply the law to the facts de novo." *Affordable Cabs, Inc. v. Employment Sec.*, 124 Wn. App. 361, 367, 101 P.3d 440 (2004).

The Act defines "employment" as "personal service, of whatever nature . . . performed for wages or under any contract calling for the performance of personal services, written or oral, express or implied." RCW 50.04.100. Thus, "a work situation satisfies the definition of 'employment'" under the statute "(1) if the worker performs personal services for the alleged employer and (2) if the employer pays wages for those services." *Penick v. Employment Sec. Dep't*, 82 Wn. App. 30, 39, 917 P.2d 136 (1996). Ms. Pederson does not dispute that she worked at Chukar for one "full day" on March 18, 2013, and was paid for her one day of work. AR at 47. Because Ms. Pederson was "employed" within the meaning of the Act, the commissioner properly applied the voluntary quit statute to determine whether she was disqualified from receiving benefits.

7

*B. Ms. Pederson voluntarily quit without good cause*

Ms. Pederson next contends that, even if the voluntary quit statute applies, she had

good cause for terminating her employment. "Whether a claimant had good cause to quit

his or her job is a mixed question of law and fact." *Campbell*, 180 Wn.2d at 573. RCW

50.20.050(2)(a) states, "An individual shall be disqualified from benefits beginning with

the first day of the calendar week in which he or she has left work voluntarily without

good cause." If a worker "voluntarily quits" her job, therefore, "she will be denied

benefits unless she has 'good cause' for quitting." *Meyering*, 102 Wn.2d at 389.

RCW 50.20.050(2)(b) sets forth "an exhaustive list of reasons that qualify as good

cause to leave work." *Campbell*, 180 Wn.2d at 572. Ms. Pederson claims she had good

cause for quitting her job at Chukar under RCW 50.20.050(2)(b)(v) and (vi) because her

expectation of a 40 hour work week was changed to a three-day working interview.

RCW 50.20.050(2)(b) provides, in relevant part:

> An individual is not disqualified from benefits under [the statute]
> when:
> . . . .
> (v) The individual's usual compensation was reduced by twenty-five
> percent or more;
> (vi) The individual's usual hours were reduced by twenty-five
> percent or more.

RCW 50.20.050(2)(b).

"A substantial wage reduction has long been recognized as a compelling reason

for terminating one's employment." *Forsman v. Employment Sec. Dep't*, 59 Wn. App.

8

76, 81, 795 P.2d 1184 (1990). But to qualify as good cause for quitting work, "some *employer* action must have caused the reduction in the employee's compensation." *Darkenwald*, 182 Wn. App. at 175 (emphasis in original); WAC 192-150-115(3). In *Darkenwald*, the employer asked the employee to work three days per week instead of her usual two. *Id.* at 175. Because this resulted in an increase in the employee's compensation, the court held that the employer "did not cause a reduction in compensation . . . [the claimant] did not have good cause to quit under RCW 50.20.050(2)(b)(vi)." *Id.* at 175-76.

Likewise, while a claimant is not disqualified from receiving unemployment benefits if her usual hours were reduced by 25 percent or more, RCW 50.20.050(2)(b)(vi), she must again show the reduction in hours was caused by the employer. WAC 192-150-120(2). These requirements are consistent with the basic purpose of the Act, which was intended "to award unemployment benefits to those unemployed *through no fault of their own.*" *Meyering*, 102 Wn.2d at 392 (emphasis added); RCW 50.01.010.

Ms. Pederson has not met her burden of establishing that any reduction in hours or compensation was caused by Chukar. The record shows that when she first arrived at work on March 18, Ms. Pederson was told she would work for three days, after which time Chukar would elect one of three candidates to offer a permanent position. Rather than leave at that time, Ms. Pederson continued working. Although she indicated she was

9

concerned Chukar might not hire her, Ms. Pederson testified at her hearing before the ALJ that "they didn't dismiss me. I was the one who left." RP at 6. The commissioner found that if Ms. Pederson "had not quit when she did, she could have continued working for at least two more days." CP at 5. The possibility that Chukar might have chosen one of the other candidates after the three days was merely conjectural. *See Korte*, 47 Wn. App. at 301-02 (because many of claimant's objections to contract proposed by her employer were conjectural, she did not have good cause to quit under former RCW 50.20.050).

More importantly, Ms. Pederson has failed to meet her burden of establishing that her decision to leave work was among the 11 enumerated grounds for establishing good cause under the voluntary quit statute. RCW 50.20.050(2)(b)(i)-(xi). Our Supreme Court has made clear that RCW 50.20.050(2)(b) sets forth an exhaustive list of reasons constituting good cause to quit. *Campbell*, 180 Wn.2d at 572 n.2; *see also Darkenwald*, 182 Wn. App. at 179 ("[W]e decline to adopt an additional reason for establishing good cause beyond the exclusive list in RCW 50.20.050(2)(b)."). Because Ms. Pederson has not shown that she quit for any of the exclusive statutory reasons, the commissioner properly denied her unemployment benefits.

Affirmed.

No. 32410-9-III
*Pederson v. Employment Security Dep't*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Siddoway, C.J.

WE CONCUR:

_____
Fearing, J.

_____
Robert Lawrence-Berrey, J.

11