IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| JESSICA TUFFLEY, | ) | No. 40134-1-III |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| STATE OF WASHINGTON, | ) | |
| EMPLOYMENT SECURITY | ) | |
| DEPARTMENT, | ) | |
| | ) | |
| Respondent. | ) | |

PENNELL, J. — Jessica Tuffley seeks judicial review of an administrative decision, denying her request for unemployment benefits. We affirm.

## FACTS AND PROCEDURAL HISTORY

Jessica Tuffley began working for Starbucks in 2019 as a senior manager in partner communications. Over the course of her employment, the scope of Ms. Tuffley's work evolved. Ms. Tuffley's job grew from brand campaigns, such as working on Starbucks 50th anniversary, to topics such as "diversity, mental health, and policy work." Administrative Record (AR) at 74. Ms. Tuffley felt she lacked background and experience in these new areas of responsibility. She worked over 60 hours a week in an effort to meet the demands of her work, but her "mental health declined." *Id.* at 75-76.

Ms. Tuffley advised her supervisor, Alisha Damodaran, about her struggles and Ms. Damodaran decided to place Ms. Tuffley on a performance improvement plan

(PIP). According to Ms. Tuffley, Ms. Damodaran told her that another employee had been placed on a PIP and then was forced to leave the company. Ms. Tuffley came to believe Ms. Damodaran wanted to use the PIP as a "tool" to fire her. *Id.* at 74-75. Ms. Tuffley never met with Ms. Damodaran to discuss the details of the PIP.

In June 2021, Ms. Tuffley approached the human resources department at Starbucks about taking a leave of absence. In an e-mail dated June 30, Ms. Tuffley advised human resources her mental health was "suffering" and it seemed "directly related to how much" she interacted with Ms. Damodaran. *Id.* at 91-92. Ms. Tuffley indicated she had consulted with her therapist and they had decided a leave of absence was her best option, and began the process of applying through the Employment Security Department for paid family and medical leave.

On July 15, 2021, Ms. Tuffley's therapist signed a "Certification of Serious Health Condition Form," describing Ms. Tuffley's condition as "Post-traumatic stress disorder, Major depressive disorder, [and] Anxiety disorder" with an expected duration of July 19, 2021, through October 11, 2021. *Id.* at 93. Adjacent to the dates of duration, there was an option to specify whether the health condition was "chronic or permanent" rather than subject to a duration. *Id.* Ms. Tuffley's therapist did not select this alternative option.

2

The Department approved Ms. Tuffley's application for paid leave benefits. The leave term was set to begin on July 19, 2021, and end on October 16, 2021. *Id.* at 94. In e-mail communications with Starbucks' human resources department during the leave application process, Ms. Tuffley was advised that when she returned to work from any approved leave she would need to decide between participating in the PIP or accepting an "exit package." *Id.* at 91.

During the leave period, a separate human resources team at Starbucks conducted an investigation of Ms. Tuffley's claim that Ms. Damodaran had subjected her to a hostile working environment. The company ultimately determined Ms. Tuffley's claims against Ms. Damodaran were "not substantiated." *Id.* at 47.

Ms. Tuffley's mental health improved during her leave of absence, but she did not fully recover. While she was on leave, Ms. Tuffley claims she spoke to numerous individuals about performing other roles within Starbucks. She also claims she applied for at least one alternate position. However, the record lacks any specific information about who Ms. Tuffley talked to or what options were sought.

Ms. Tuffley returned to work on October 21, 2021. At that point, she felt her job conditions had not changed for the better. If anything, she believed things had gotten worse because Ms. Damodaran's supervisor, who she considered an ally, had left the

organization.

On October 25, 2021, Ms. Tuffley provided an oral notice of resignation to Starbucks' human resources manager Sara Meagher. As Ms. Meagher recalled, Ms. Tuffley stated she was quitting because "[s]he did not [want] to go on the [PIP]." *Id.* at 46. Ms. Meager was also aware Ms. Tuffley had mental health concerns and did not want to continue in the fast-paced environment of her current position. Ms. Meager surmised it was a "combination" of reasons that led to Ms. Tuffley's decision, but "ultimately" it was "the refusal to do the [PIP]." *Id.* at 47.

Ms. Tuffley's last day with Starbucks was November 1, 2021. After her departure, Ms. Tuffley applied for unemployment benefits with the Employment Security Department.

In her original application for unemployment benefits, Ms. Tuffley stated she had been "laid off." *Id.* at 66. As further explanation, she stated as follows:

> Over the course of the pandemic, the necessary subject matter knowledge of my role changed. Over the course of the summer, my work was redistributed and the team was restructured. My position was eliminated and is being replaced and they are looking for someone with that specific subject matter knowledge.

*Id.*

Starbucks responded to Ms. Tuffley's application by stating she had "quit."

4

*Id.* at 68. When asked why Ms. Tuffley quit, Starbucks responded she "quit rather than complete a PIP." *Id.* at 69.

After receiving different explanations for Ms. Tuffley's separation from Starbucks, the Department asked Ms. Tuffley for additional information. In response to the Department's request, Ms. Tuffley wrote as follows:

> To clarify my original response, over the course of my employment, the scope of my job responsibilities evolved and grew from the general "long-term brand campaigns and agenda-setting announcements" work (ex: Starbucks 50th Anniversary) for which I was originally hired to include a heavy emphasis on specific topics that I have no background knowledge or experience in, including Starbucks inclusion and diversity, mental health, and policy work. My understanding is that my role focusing generally on brand campaigns was eliminated when I was separated (I was not separated because it was eliminated) and that Starbucks is replacing it with a position that specifically calls out expertise and background in these specific areas. This reinforces Starbucks need to have someone in role with expertise that I do not have.

*Id.* at 74.

In response to Starbucks' claim that she quit rather than complete a PIP, Ms. Tuffley provided the following statement:

> My manager decided to put me on a performance improvement plan (PIP)—which I strongly disagreed with. Here are some of the primary reasons:
>
> – I do not believe that my manager was putting me on the PIP in good-faith to improve my skills, but instead using the PIP as a tool to fire me. When my manager told me she was going to put me on a PIP she also told me that

she had put a peer on my team on a PIP before my peer was separated. This disclosure about my peer's separation felt very threatening to me and reinforced my belief that my manager was not acting in good-faith.

– I felt my manager was trying to derail my career at Starbucks as I had seen her do to others. My job environment felt hostile in general, and I did not feel psychologically safe with my manager. I was hired without a background in communications and not given any training for my role or clear expectations for success. Feedback from my manager was vague and subjective, and often felt like a personality attack even though the end work was praised. I consistently tried to get feedback from her in a timely manner, but was often ignored until after the final work product had been delivered—when I was then required to defend my decisions. My manager explained the PIP process as being a very intense and time-consuming, but given her management to date, I did not trust that she had any real interest in helping me improve my skills.

– I documented (via meetings and email) my concerns about my manager's intent and behavior to three people in HR, and my VP (my manager's manager). HR opened an internal investigation due to this feedback about my manager's behavior, and I asked to explore other options including: have someone else administer the PIP, put hold on the PIP while I looked for a new role, to be transferred to a different role, to get additional support for my workstreams, etc. However, I was told that my only option was either do the PIP administered by my current manager or take a separation package, regardless of the outcome of the investigation.

– Last spring, my mental health declined due to the consistent 60+ hours I worked weekly and the focus on topics of which I have no experience or background in (primarily inclusion and diversity, and policy work). This decline continued until I took a Washington State approved Paid Family & Medical Leave during the summer to focus on restoring my mental health.

– Even before my manager wanted to put me on this PIP, I was actively seeking other roles at Starbucks (my manager knew this). I was looking for

6

other roles daily, talking with many people across the organization to learn about their teams and focus areas and had already applied for another role. Starbucks policy prevents employees from applying internally to a new role during a PIP and in the 6 months following it. Given the hostile work environment and poor management, it was not a viable option to be locked into a role which was detrimental to my health and that I was actively trying to leave.

– I wanted to stay at Starbucks and was actively looking at ways to do that, but I was unwilling to further jeopardize my mental health by participating in the PIP under these circumstances, so I was forced by Starbucks policy to take the separation package.

Additionally, there is language in my separation agreement states that I retain my right to unemployment benefits.

*Id.* 74-76.

The Department denied Ms. Tuffley's claim for unemployment benefits. *Id.* at 58. Citing former RCW 50.20.050 (2021) and WAC 192-150-085, the denial letter stated that the reasons Ms. Tuffley provided for voluntarily leaving her position with Starbucks were not reasons that would qualify her for benefits.

Ms. Tuffley appealed the Department's denial of benefits to an administrative law judge (ALJ). A hearing was held on February 6, 2023. Ms. Tuffley was represented by counsel. At the hearing, both Ms. Tuffley and Ms. Meagher (the Starbucks human resources manager) testified. A 40-page packet of exhibits was also entered into the record. The packet included various Department and employment records, including the

certification of serious health condition form signed by Ms. Tuffley's therapist on July 15, 2021. Apart from the aforementioned form, the record did not contain any information from Ms. Tuffley's therapist or any other medical or mental health provider.

The ALJ issued a written decision, affirming the Department's decision to deny unemployment benefits. The ALJ decision included 15 findings of fact and 20 conclusions of law.

The pertinent[1] findings are consistent with the foregoing factual summary. Of note, the ALJ found "[i]nsufficient evidence exists to establish [Ms. Tuffley] quit this job on the recommendation of a medical professional; the only signed Certification of Serious Health Condition Form found in the record indicates the conditions are not chronic or permanent, and listed an expected restrictions 'end date' of October 11, 2021." *Id.* at 104. The ALJ also found "[t]he separation was not caused by an employer-initiated layoff due to lack of work as [Ms. Tuffley] initially reported to the Department. Therefore, she did not disclose all requested facts about the separation when seeking benefits as required. This was intentional." *Id.*

In the conclusions of law, the ALJ determined that (1) Ms. Tuffley voluntarily

---

[1] On further administrative appeal, a Department commissioner rejected the ALJ's finding of fact 6. The substance of this finding is not included in the foregoing summary.

ended her employment with Starbucks, and (2) the reasons given for her separation did not fall under the good cause exceptions in former RCW 50.20.050(2)(b) to qualify for benefits.

Ms. Tuffley appealed the ALJ's decision to a Department commissioner. The commissioner affirmed the decision and adopted the majority of the ALJ's findings of fact and conclusions of law.[2] The commissioner explained Ms. Tuffley "failed to establish that she left work primarily because of [an] illness or disability on November 1, 2021, or that her illness or disability necessitated her leaving work on November 1, 2021" as required by former RCW 50.20.050(2)(b)(ii). *Id*. at 123. "Rather, [Ms. Tuffley] quit because she did not agree with the PIP or her supervisor administrating it. Nothing about [Ms. Tuffley's] medical condition warranted quitting on November 1, 2021." *Id*. The commissioner additionally determined Ms. Tuffley, "failed to establish that she pursued reasonable alternatives prior to quitting on November 1, 2021, or that the pursuit would be futile" as required by statute. *Id*.

Ms. Tuffley filed a petition for judicial review in Thurston County Superior Court. The superior court certified the case for direct review by the Court of Appeals under

---

[2] The commissioner did not adopt finding of fact 6 and conclusion of law 8. These pertained to the timing of when Ms. Tuffley experienced a change in the scope of her position with Starbucks and when Ms. Damodaran recommended a PIP.

No. 40134-1-III
*Tuffley v. Emp. Sec. Dep't*

RCW 34.05.518(1)(a)(i). A Division Three panel considered Ms. Tuffley's appeal without oral argument after receiving an administrative transfer of the case from Division Two.

LEGAL STANDARDS GOVERNING
UNEMPLOYMENT BENEFIT APPEALS

"The Washington Administrative Procedure Act (APA), chapter 34.05 RCW, governs judicial review of a final decision by the Commissioner of the [Employment Security Department]." *Verizon Nw., Inc. v. Emp. Sec. Dep't*, 164 Wn.2d 909, 915, 194 P.3d 255 (2008). Judicial review is of the commissioner's decision, not the ALJ's, "except to the extent that the commissioner adopts the ALJ's findings." *Darkenwald v. Emp. Sec. Dep't*, 183 Wn.2d 237, 244, 350 P.3d 647 (2015). "A decision by the Department commissioner is considered prima facie correct, and the party challenging the decision carries the burden of demonstrating its invalidity." *Pederson v. Emp. Sec. Dep't*, 188 Wn. App. 667, 672, 352 P.3d 195 (2015) (citation omitted). *See* RCW 50.32.150.

Washington's Employment Security Act, Title 50 RCW, "provides unemployment benefits to any unemployed person unless that person is statutorily disqualified from receiving benefits." *Verizon Nw.*, 164 Wn.2d at 916. One reason for disqualification is the claimant voluntarily ended their employment without good cause. *Id.* There are

10

12 statutorily recognized "good cause" exceptions that would allow such a claimant to receive unemployment benefits. *See* former RCW 50.20.050(2)(b).

Disability is one of the statutorily recognized exceptions to disqualification. A claimant "has good cause" and therefore "is not disqualified from benefits" if their "separation was necessary because of the illness or disability of the claimant or death, illness, or disability of a member of the claimant's immediate family." Former RCW 50.20.050(2)(b)(ii). To be eligible for benefits under this exception, the claimant must have "made reasonable efforts to preserve the claimant's employment status by requesting a leave of absence, by having promptly notified the employer of the reason for the absence, and by having promptly requested employment when again able to assume employment." Former RCW 50.20.050(2)(b)(ii)(A).

The Department has issued regulations further explaining the requirements for an employee claiming good cause based on a disability. *See* former WAC 192-150-055 (2010) and WAC 192-150-060.[3] Under the regulations, a claimant must meet three requirements to establish good cause:

> (a) [They] left work primarily because of [their stated] illness, disability, or death [of a member of their immediate family]; and
> (b) The illness, disability, or [family member's] death made it necessary for [them] to leave work; and

---

[3] These regulations were authorized by RCW 50.12.010, .040, and .042.

11

> (c) [They] first exhausted all[4] reasonable alternatives prior to leaving work, including:
>> (i) Notifying [their] employer of the reason(s) for the absence as provided in WAC 192-150-060; and
>> (ii) Asking to be reemployed when [they] are able to return to work.

Former WAC 192-150-055(1).

Whether a benefits claimant has established good cause to quit their job "is a mixed question of law and fact." *Campbell v. Emp. Sec. Dep't*, 180 Wn.2d 566, 573, 326 P.3d 713 (2014). "We review the agency's factual findings for substantial evidence." *Id.* "The process of applying the law to the facts is a question of law subject to de novo review." *Id*. Factual findings left unchallenged are verities on appeal. *Id*.

## ANALYSIS

Ms. Tuffley's argument on appeal is that she has met all three requirements for good cause, as set forth by former WAC 192-150-055(1)(a)-(c). We disagree.

---

[4] The regulation in effect at the time of Ms. Tuffley's claim stated she was required to exhaust "all" reasonable alternatives. This was consistent with the statutory language in former RCW 50.20.050(2)(b)(ii)(A) up until the statute was amended in 2021. As part of the 2021 amendments, the legislature eliminated the word "all" from this portion of the statute. Under the amendments in effect at the time of Ms. Tuffley's claim, the statute only required a claimant to show "reasonable efforts." Former RCW 50.20.050(2)(b)(ii)(A). Despite this statutory change, the current regulations continue to require a claimant to exhaust "all reasonable alternatives." *See* former WAC 192-150-055. The parties do not address how this apparently conflicting language impacts Ms. Tuffley's case. The difference is not pertinent to our analysis.

*Whether Ms. Tuffley left work primarily because of a mental disability. Former WAC 192-150-055(1)(a).*

The record supports the commissioner's conclusion that Ms. Tuffley "failed to establish that she left work primarily because of" a disability. AR at 123. Starbucks Human Resources Manager Sarah Meagher met with Ms. Tuffley when Ms. Tuffley provided her oral resignation notice. According to Ms. Meagher, Ms. Tuffley stated she was quitting because she did not want to participate in the PIP. The commissioner was entitled to credit this testimony. *See In re Disciplinary Proceedings Against Denend*, 98 Wn.2d 699, 704, 657 P.2d 1379 (1983).

Ms. Tuffley argues that, despite Ms. Meagher's testimony, the reasons for the resignation remain primarily rooted in her mental health. Ms. Tuffley points to testimony and documentation in the record showing that her mental health was triggered by interactions with her supervisor, Ms. Damodaran. Because Ms. Damodaran was the individual tasked with administering the PIP, and because Ms. Tuffley was required to participate in the PIP in order to retain her employment, Ms. Tuffley claims her reasons for resigning were primarily based on her mental health.

Ms. Tuffley's shifting explanations for why she left Starbucks support discrediting her claim that she resigned primarily for mental health reasons. Ms. Tuffley did not present any evidence that she told Ms. Meagher, at the time of resignation, that her refusal

to participate in the PIP was rooted in her mental health condition. To make matters

worse, when Ms. Tuffley first applied for unemployment benefits with the Department,

she said she was "laid off." AR at 66. The ALJ found this misrepresentation was

"intentional." *Id.* at 104.[5] Even when asked for follow-up about this misrepresentation,

Ms. Tuffley stated she believed her role with Starbucks was being "eliminated" and

replaced by a position calling for skills beyond her "background knowledge and

experience." *Id.* at 74. In response to Starbucks' claim that Ms. Tuffley quit because

she did not want to participate in a PIP, Ms. Tuffley stated she believed the plan was

not initiated "in good-faith to improve my skills, but instead . . . as tool to fire me." *Id.*

at 74-75. While Ms. Tuffley noted that she had been on a leave of absence for mental

health reasons and that her mental health was jeopardized by working with her manager

in what she deemed a hostile work environment, Ms. Tuffley never claimed the reason

she could not participate in the PIP was her mental health. *See Id.* at 75-76. Rather,

Ms. Tuffley made quite plain she did not want to participate in a PIP that in her opinion

---

[5] During the administrative hearing, the ALJ asked Ms. Tuffley why she reported she had been "laid off." AR at 31. Ms. Tuffley testified she "didn't" report being laid off. *Id.* Instead, Ms. Tuffley claimed she simply made a choice from a "dropdown menu" and "didn't understand the nuances of like, the different meanings." *Id.* at 31. This testimony is inconsistent with the lengthy explanation provided to the Department about how she had been laid off. *See id.* at 66.

would be used as a tool to terminate her employment.

While Ms. Tuffley's mental health may have played *a* role in her decision to resign in lieu of participating in the PIP, substantial evidence supports the conclusion that her disability was not the *primary* motivating factor. On this basis alone, the Department's decision must be affirmed.

*Whether Ms. Tuffley's disability necessitated her resignation. Former WAC 192-150-055(1)(b).*

Substantial evidence supports the commissioner's conclusion that Ms. Tuffley failed to show her disability made it necessary to resign.

Department regulations define "necessary" as "conditions [that] are of such degree or severity in relation to [the claimant's] particular circumstances that they would cause a reasonably prudent person acting under similar circumstances to quit work." Former WAC 192-150-055(4)(c). The evidence presented by Ms. Tuffley failed to show her resignation was necessary under to this definition.

While Ms. Tuffley testified that she felt her mental health made it necessary for her to resign, she did not produce any evidence indicating that a reasonably prudent person in her circumstances would be compelled to make a similar choice. The record demonstrates Ms. Tuffley's therapist certified a diagnosis of "Post-traumatic stress disorder, Major depressive disorder, [and] Anxiety disorder." AR at 93. But there is no

evidence in the record explaining how those disorders impact Ms. Tuffley or how they might be exacerbated by participating in a PIP administered by Ms. Damodaran. As Ms. Tuffley described it, her work was difficult and stressful. The requirement of participating in a PIP understandably made things worse. But these are all common workplace scenarios endured by management-level employees. The record does not contain any evidence explaining why Ms. Tuffley's mental health diagnoses were sufficiently severe that otherwise ordinary workplace stressors made resignation reasonably necessary.[6]

Ms. Tuffley claims her therapist's recommendations to her show resignation was necessary. She points to her testimony stating that her therapist told her it would be "unwise" for her to return to work. *Id.* at 38. The Department argues that Ms. Tuffley's recitation of her therapist's advice is hearsay. But this objection was not preserved. Nevertheless, the therapist's statements are too thin to compel a finding of necessity. Ms. Tuffley's therapist did not testify at the hearing. Nor did she provide a written report, documenting the extent of Ms. Tuffley's mental health condition. Without any details about Ms. Tuffley's diagnoses, how those impacted her life, and how this condition may

---

[6] As stated previously the therapist also certified that Ms. Tuffley's serious health condition arising out of these diagnoses had an "expected duration" of approximately three months and was not "chronic or permanent." *Id*.

have exacerbated her participation in a PIP with Ms. Damodaran, the record lacks any basis for assessing whether a reasonable person in Ms. Tuffley's situation would have felt compelled to resign from her position with Starbucks.

*Whether Ms. Tuffley exhausted all reasonable alternatives prior to separation. Former WAC 192-150-055(1)(a)(iii).*

Substantial evidence supports the commissioner's conclusion that Ms. Tuffley "failed to establish that she pursued reasonable alternatives prior to quitting" her position with Starbucks. AR at 123.

The Employment Security Act requires a benefits claimant to pursue reasonable alternatives to maintain employment in order to establish good cause eligibility for benefits on the basis of a disability resignation. Former RCW 50.20.050(2)(b)(ii)(A). The statute's accompanying regulations provide that in order to establish good cause for leaving work voluntarily the claimant must "notify [their] employer about [their] disabling condition" prior to separating from employment. WAC 192-150-060(1). *See also* former WAC 192-150-055(1)(c)(i). Notice "shall include any known restrictions on the type or hours of work [the claimant] may perform." WAC 192-150-060(1). "Any restrictions on the type of hours of work [the claimant] may perform must be supported by a physician's statement or by the terms of a collective bargaining agreement or individual hiring contract." WAC 192-150-060(2).

17

Ms. Tuffley claims a mental health disability restricted her from a certain type of work—working under a PIP administered by Ms. Damodaran. Yet she failed to provide a physician's statement to support this restriction. The only information provided by Ms. Tuffley's therapist was a certification form, indicating Ms. Tuffley had a disabling condition that required a leave of absence through October 11, 2021. Because Ms. Tuffley did not provide a supporting statement from her physician or therapist, the plain wording of WAC 192-150-060(2) precludes Ms. Tuffley's ability to establish reasonable alternatives.

## CONCLUSION

The commissioner's decision is affirmed. Because Ms. Tuffley had not prevailed on appeal, her request for attorney fees is denied.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____    _____
Staab, A.C.J.                      Cooney, J.