# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| LEAH JACKSON, | No. 59636-9-II |
| Appellant, | |
| v. | |
| STATE OF WASHINGTON EMPLOYMENT SECURITY DEPARTMENT, | UNPUBLISHED OPINION |
| Respondent. | |

MAXA, J. – Leah Jackson appeals the denial of her application for unemployment benefits. Jackson resigned from her job as a bartender at Brewmaster's Bakery after an unknown person shot at Jackson's workplace.

Under RCW 50.20.050(2)(b)(viii), a claimant for unemployment benefits has "good cause" to terminate their employment if "[t]he claimant's worksite safety deteriorated, the claimant reported such safety deterioration to the employer, and the employer failed to correct the hazards within a reasonable period of time." WAC 192-150-130(2) states that to establish good cause under RCW 50.20.050(2)(b)(viii), the employee "must notify [their] employer of the safety issue and give your employer a reasonable period of time to correct the situation." For safety issues that involve immediate danger of serious injury or death, the employer "must take immediate steps to correct the situation." WAC 192-150-130(2)(b)(i).

The Commissioner of the Employment Security Department (ESD) ruled that Jackson did not satisfy the requirements of RCW 50.20.050(2)(b)(viii) and WAC 192-150-130(2) because she did not notify Brewmaster's of any safety concerns and Brewmaster's took immediate steps to address the shooting incident. Therefore, the Commissioner ruled that Jackson did not qualify for unemployment benefits.

We hold that substantial evidence supports the Commissioner's factual findings that Jackson did not notify Brewmaster's of her safety concerns and that Brewmaster's took immediate steps to address shooting the incident. Therefore, Jackson did not show good cause to voluntarily terminate her employment under RCW 50.20.050(2)(b)(viii) and WAC 192-150-130(2). Accordingly, we affirm the Commissioner's ruling denying Jackson unemployment benefits.

FACTS

*Background*

Jackson began working as a part time bartender for Brewmaster's Bakery in October 2019. Brewmaster's planned to hold its monthly drag queen story hour on December 10, 2022, which garnered backlash from protesters. While at work on December 6, Jackson received several hateful and threatening phone calls opposing the event. A coworker told Jackson that they had heard that a right wing extremist group planned to protest the event scheduled for December 10. Jackson was not scheduled to work again until December 9.

At approximately noon on December 7, someone shot at the Brewmaster's building. Brewmaster's was not scheduled to open until two hours later. The owner of Brewmaster's, Marley Rall, arrived at the scene and met with police. She discussed security options, including creating a safety plan, increasing surveillance, and installing a camera that would be monitored

by police. Both Rall and Jackson believed that the business was targeted because of the event it was hosting.

Jackson learned of the shooting that night from a former employer and from Brewmaster's patrons. She reached out to Rall via text "to get clarity on the situation and what was going on." Admin. Rec. (AR) at 13. Rall responded by text the next day, explaining that she had been dealing with the situation the entire previous day and did not have time to text or call Jackson. Jackson replied that she had no idea that the incident occurred until she found out second hand and that she felt "in the dark." AR at 63.

Rall stated that she was sorry that Jackson felt left out and that she had not had time to talk to any employees except the person who was scheduled to work. Jackson replied, "All of your employees are affected…if it's a matter of safety." AR at 62. Rall responded with the following text: "I've got a lot going on and trying to do my best for everyone and cannot do everything all the time for everyone. If you feel that's not what is happening, and you don't feel safe I am going to invite you to give your notice and I will fill your shifts." AR at 62. Late on the night of December 8, Rall asked Jackson if she intended to work her shift the following day, to which Jackson said she was and "only wanted just some clarity on the situation." AR at 62.

On the morning of December 9, Rall responded to Jackson that she felt Jackson was not expressing concerns, but complaining that Rall had not reached out to her. Jackson replied,

> I did not want something immediately. I understood that you had a lot of things going on because of this situation. I just felt like I was at a severe disadvantage because I don't have social media and I wasn't informed of what was going on at the place I work. I honestly wasn't trying to do anything more than that.
>
> I was trying to convey that it doesn't just affect those on the shift.

AR at 59. Jackson then stated that she was turning in her resignation.

3

*Unemployment Claim*

Jackson applied for unemployment benefits, and the ESD denied her claim based on lack of a good reason to quit. Jackson appealed the denial, and an administrative law judge (ALJ) at the Office of Administrative Hearings conducted a hearing at which Jackson and Rall testified. The issue was whether Jackson had good cause to voluntarily terminate her employment under RCW 50.20.050(2)(b)(viii).

The ALJ issued an Initial Order. The ALJ found in finding of fact 3 that Jackson "resigned on December 9, 2022 over safety concerns." AR at 83. The ALJ also found in finding of fact 7 that "[t]he Claimant learned of this incident and reached out to the Employer with general concerns." AR at 83. The ALJ concluded in conclusion of law 10 that Jackson had "established good cause for quitting pursuant to RCW 50.20.050(2)(b)(viii), due to a deterioration of worksite safety" and reversed the denial of benefits.

In conclusion of law 10, the ALJ stated that, although Rall took immediate steps to correct the safety issue, these steps were not communicated to Jackson. The ALJ reasoned that "[w]hile [WAC 192-150-120] is silent on creating an express requirement that an Employer notify a Claimant about what they are doing to fix a situation, it is logical to assume that it is a necessary component." AR at 85. Here, there was no way Jackson could know what immediate steps, if any, Brewmaster's was taking to keep the worksite safe. Therefore, the ALJ concluded that Jackson's belief that the worksite had a safety issue provided good cause to quit.

Brewmaster's petitioned for review by the Commissioner. The Commissioner accepted all of the ALJ's findings of fact and conclusions of law except for findings 3 and 7 and conclusion 10. The Commissioner set aside the ALJ's Initial Order, and ruled, "[W]e find the

4

evidence of record does not establish claimant voluntarily quit due to a deterioration of worksite safety under RCW 50.20.050(2)(b)(viii)." AR at 106.

First, the Commissioner noted that RCW 50.20.050(2)(b)(viii) and WAC 192-150-130(2) require a claimant to notify or report to their employer the safety issue. The Commissioner found that "[n]othing in the record establishes claimant notified employer about any safety issue or concerns she had about the incident. Claimant merely sought information about the incident." AR at 106.

Second, the Commissioner disagreed with the ALJ's "inclusion of an 'express requirement' in WAC 192-150-130 for an employer to notify a claimant about the steps it is taking to address a safety concern." AR at 106. The Commissioner found the law required only action from an employer, not notice. Even though Jackson could not have known if the safety issue was corrected, "[t]he fact an employer does not notify a claimant of the steps it has taken does not negate the fact an employer has taken steps to address a safety issue." AR at 106. The Commissioner stated, "Employer presented evidence it took immediate steps to address the shooting incident. Though claimant was unaware of these steps at the time she quit, she has not satisfied her burden in establishing employer failed to take immediate steps as required pursuant to WAC 192-150-130(2)(i)." AR at 106.

Jackson appeals the Commissioner's decision.[1]

ANALYSIS

A.     DENIAL OF GOOD CAUSE UNDER RCW 50.20.050(2)(b)(viii)

Jackson argues the Commissioner erred when it determined that she did not establish good cause under RCW 50.20.050(2)(b)(viii) and WAC 192-150-130(2). We disagree.

---

[1] The superior court transferred the case to this court for direct review under RCW 34.05.518.

1.    Standard of Review

Our review of administrative appeals is governed by the Washington Administrative Procedure Act (APA), chapter 34.05 RCW. Under the APA, we may grant relief from an agency's order based on one of nine reasons listed in RCW 34.05.570(3), including that the agency's decision was based on an error of law, was not supported by substantial evidence, or was arbitrary and capricious. RCW 34.05.570(3)(d), (e), (i). We apply the APA standards directly to the administrative record. *Campbell v. Emp't Sec. Dep't*, 180 Wn.2d 566, 571, 326 P.3d 713 (2014). We review the Commissioner's decision, not that of the ALJ. *Whitehall v. Emp't Sec. Dep't*, 25 Wn. App. 2d 412, 419, 523 P.3d 835 (2023). The Commissioner's decision is prima facie correct and the challenging party bears the burden of demonstrating its invalidity. *Pederson v. Emp't Sec. Dep't,* 188 Wn. App. 667, 672, 352 P.3d 195 (2015).

We review the Commissioner's factual findings to determine whether substantial evidence supports them. *Michaelson v. Emp't Sec. Dep't*, 187 Wn. App. 293, 298, 349 P.3d 896 (2015). Substantial evidence is "evidence that would persuade a fair-minded person" that the finding is true. *Id.* at 298-99. Further, we view the factual evidence in the light most favorable to the Commissioner. *Id.* at 299. The Commissioner's uncontested findings of fact generally are treated as verities on appeal. *Id.* Our review of uncontested findings of fact is limited to whether those findings support the Commissioner's conclusions of law. *Pederson*, 188 Wn. App. at 674.

We review an agency's interpretation of the law de novo. *Gibson v. Emp't Sec. Dep't*, 185 Wn. App. 42, 52, 340 P.3d 882 (2014). And the application of the law to the facts is a question of law we review de novo. *Campbell*, 180 Wn.2d at 573. While we give substantial weight to a commissioner's interpretation of employment security law due to the ESD's expertise in the subject matter, we are not bound by the ESD's decision. *Gibson*, 185 Wn. App.

at 52. However, we "are bound to give unemployment compensation statutes a liberal construction." *Campbell*, 180 Wn.2d at 572-73.

2.    Legal Principles

RCW 50.20.050(2)(a) states that a person who voluntarily leaves work without good cause is disqualified from receiving unemployment benefits, and good cause reasons are limited to those listed in subsection (b).

Under RCW 50.20.050(2)(b)(viii), good cause exists if "[t]he claimant's worksite safety deteriorated, the claimant reported such safety deterioration to the employer, and the employer failed to correct the hazards within a reasonable period of time." In addition, WAC 192-150-130(2) states that to establish good cause under RCW 50.20.050(2)(b)(viii), the employee "must notify [their] employer of the safety issue and give your employer a reasonable period of time to correct the situation." A "reasonable period of time" is the amount of time a "reasonably prudent person" would remain at the worksite with the safety deterioration. WAC 192-150-130(2)(b). If the safety issue presents an imminent danger of serious bodily harm or death, a "reasonable period of time" means that the employer "must take immediate steps to correct the situation." WAC 192-150-130(2)(b)(i).

The determination of whether an applicant qualifies for a good cause exception is a mixed question of law and fact. *Campbell*, 180 Wn.2d at 573. Analyzing a mixed question of law and fact requires (1) establishing the relevant facts, (2) determining the applicable law, and then (3) applying the law to those facts. *Tapper v. Emp't Sec. Dep't*, 122 Wn.2d 397, 403, 858 P.2d 494 (1993).

3. Analysis

The Commissioner made two factual findings to support its decision, finding that Jackson did not notify Brewmaster's that she had safety concerns and that Brewmaster's took immediate steps to address the shooting incident.

a. Failure to Assign Error

Jackson does not assign error to these findings. However, the Commissioner's findings were not numbered, and instead were contained in the body of its opinion. And Jackson does argue in her brief that the evidence supports that she reported the safety concerns to Brewmaster's and that Brewmaster's failed to take immediate steps to correct the situation. Therefore, we will not treat the Commissioner's findings as verities and instead will review those findings for substantial evidence. *See Union Elevator & Warehouse Co. v. State*, 144 Wn. App. 593, 601, 183 P.3d 1097 (2008).

b. Notice to Employer

The Commissioner found that "[n]othing in the record establishes claimant notified employer about any safety issue or concerns she had about the incident. Claimant merely sought information about the incident." AR at 106.

Jackson refers to the text message exchange with Rall in which Jackson stated "All of your employees are affected . . . if it's a matter of safety," and Rall responded by stating, "[If] you don't feel safe I am going to invite you to give your notice." AR at 62. Jackson claims that this was sufficient notice under RCW 50.20.050(2)(b)(viii) and WAC 192-150-130(2) and that Rall acknowledged this notice.

However, the Commissioner relied on other evidence. Jackson's first text to Rall was "to get clarity on the situation and what was going on." AR at 13. Her next text complained that she

was "in the dark" about what had happened. AR at 63. Later, Jackson said she "only wanted just some clarity on the situation." AR at 62. In her resignation text, Jackson said, "I just felt like I was at a severe disadvantage because I don't have social media and I wasn't informed of what was going on at the place I work. I honestly wasn't trying to do anything more than that." AR at 59.

The evidence regarding notice was mixed and somewhat ambiguous. The Commissioner was allowed to consider and weigh the evidence and find that Jackson did not notify Brewmaster's about any safety concerns and instead merely sought information about the incident. We conclude that substantial evidence supported the Commissioner's finding that Jackson did not notify Brewmaster's of any safety concerns.

Accordingly, we hold that the Commissioner did not err in concluding that Jackson did not satisfy the notice requirement of RCW 50.20.050(2)(b)(viii) and WAC 192-150-130(2).

b.    Immediate Steps

The Commissioner also found that Brewmaster's presented evidence that it took immediate steps to address the shooting incident, and that Jackson did not satisfy her burden in establishing that Brewmaster's failed to take immediate steps.

There was evidence that Brewmaster's took immediate steps to address the incident. Jackson does not challenge the finding of fact that Rall met with police and discussed security options, including creating a safety plan, increasing surveillance, and installing a camera that would be monitored by police. This constitutes substantial evidence that Brewmaster's did take immediate steps to address the shooting incident.

Jackson argues and the ALJ concluded that the immediate steps requirement included an implied requirement that an employer keep its employees informed regarding the steps being

9

taken. We disagree. Neither RCW 50.20.050(2)(b)(viii) nor WAC 192-150-130(2) contains such a requirement. A fundamental principle of statutory interpretation is that we cannot add words to an unambiguous statute under the guise of construction. *McColl v. Anderson*, 6 Wn. App. 2d 88, 91, 429 P.3d 1113 (2018). We decline to add a requirement that is not contained in either the statute or the corresponding WAC.

Accordingly, we hold that the Commissioner did not err in concluding that Jackson did show that Brewmaster's failed to satisfy the immediate steps requirement of RCW 50.20.050(2)(b)(viii) and WAC 192-150-130(2).

## CONCLUSION

We affirm the Commissioner's ruling denying Jackson's unemployment benefits.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, J.

We concur:

_____
CRUSER, C.J.

_____
LEE, J.

10